## BOYKIN et ux. v. FIRST STATE BANK OF COMANCHE et al.

### No. 1101.

Court of Civil Appeals of Texas. Eastland.

May 19, 1933.

Rehearing Denied June 16, 1933.

Callaway & Callaway, of Brownwood, and Oscar Callaway, of Comanche, for plaintiffs in error.

George Smith, of Comanche, for defendants in error.

### HICKMAN, Chief Justice.

Boykin and wife purchased from L. B. Russell, Jr., 777 acres of land in Comanche county for a recited consideration of $23,310, of which a part was cash and the balance was the assumption by Boykin of certain vendor's lien notes executed by Russell to the First State Bank of Comanche, defendant in error, hereinafter referred to as the State Bank. Boykin and wife immediately moved upon the land, using same as their homestead, which use had continued to the date of the trial of this case. Two years after they acquired this land and moved on it, they procured a loan from the Federal Land Bank of Houston, hereinafter referred to as the Federal Bank, and executed their note and deed of trust covering the entire 777 acres to secure same. The amount of this loan was less than the total amount of purchase-money indebtedness owing to

the State Bank. The latter assigned to the Federal Bank a portion of its notes equal to the amount of the loan, constituting the lien of the Federal Bank a first and superior lien to that retained by it. Thereafter Boykin and wife executed a deed of trust to S. J. Hicks, trustee, to secure the State Bank in the payment of a promissory note, which note included the balance of the purchase-money notes not assigned by it to the Federal Bank, and also included money loaned by the State Bank to Boykin. This deed of trust covered the entire tract of 777 acres, including the 200 acres which the Boykins designated as their homestead at the time they procured the loan from the Federal Bank. Default having been made by Boykin on his note to the State Bank, the trustee Hicks advertised the entire tract for sale. Prior to the date of sale, this suit was instituted by Boykin and wife to enjoin the sale in so far as it included the 200-acre tract which had been designated by them as their homestead. Their petition sought a temporary injunction, prayed that same, upon hearing, be made permanent, and further prayed for an order declaring that their homestead was not liable for any part of the debt secured by said deed of trust. The temporary injunction was granted as prayed for, and the trustee Hicks proceeded with the sale as advertised, omitting therefrom the 200-acre homestead tract. The State Bank was the purchaser at this sale.

After the sale, the State Bank and the trustee filed their answer and amended answer, in which they alleged that a portion of the indebtedness secured by their deed of trust was for purchase money, and therefore constituted a valid lien upon the homestead. The bank also, by way of cross-action, alleged that it had paid certain semi-annual installments of interest and principal to the Federal Bank on the note executed by the Boykins and had received transfers and assignments of the coupons representing such payments; that it was necessary for it to make these payments in order to protect itself. Further allegations were that, in the assignment from the Federal Bank to the State Bank, said installments were made a second lien to the lien retained by the former. The prayer was for judgment on these installment coupons and for a foreclosure of the lien upon the 200-acre tract. The Boykins filed a supplemental petition, admitting the payment by the State Bank to the Federal Bank of the installments, but alleging that the 577-acre tract, being the excess above their homestead in the 777-acre tract, was worth more than the amount of the federal loan, and prayed that in its judgment the court order the excess first sold for the satisfaction of the installment payments before resort should be had to their homestead.

The trial was before the court without a jury. There was evidence of payments made by the Boykins to the State Bank from time to time, and the court, applying these payments to that portion of the indebtedness first incurred, and being for a portion of the purchase money of the land, concluded that all of the remaining indebtedness owing by the Boykins to the State Bank was for borrowed money, for which no lien against the homestead existed. Defendant in error has filed no cross-assignments complaining of this portion of the judgment, and therefore, 'for the purpose of disposing of this appeal, the second deed of trust, being the one executed to Hicks, trustee, for the benefit of the State Bank, will be regarded as having been a lien on the excess only.

On the cross-action of defendant in error, based upon the installment coupons acquired by it from the Federal Bank, amounting to $724.18, it was the opinion of the court below that same constituted a valid lien against the homestead, subject, of course, to the prior lien retained by the Federal Bank, and it was ordered that said 200-acre homestead tract be sold to satisfy the indebtedness; the court refusing to order any part of the excess sold to satisfy said installments. The Boykins were not satisfied with that portion of the judgment ordering their homestead sold and refusing to order the excess first sold, and have perfected a writ of error to this court to have that action reviewed.

On original submission this case was not argued orally, and, upon consideration of the briefs and the record, it was our view that difficult questions involving the application of the equitable rules of marshaling assets were presented. We invited oral argument and supplemental briefs. Our invitation was accepted, and we have had the benefit of a full presentation of the theories of each party.

The statement of facts discloses that the deed of trust executed to the Federal Bank was introduced in evidence upon the trial of the case, but same was not copied in full in the statement of facts. Plaintiff in error has had a certified copy of this instrument prepared, and, by agreement with defendant in error and by permission of the court, same has been filed here as a supplemental statement of facts. Since the record before us affirmatively shows that this instrument was in fact introduced in evidence below, we think it permissible to file same here as a supplement to the statement of facts, and we have considered same just as if it had been originally copied therein. A consideration of this instrument, to our minds, solves the problems which have been of doubtful solution. We copy the following therefrom:

"It is agreed that if default be made in the payment of any of the semi-annual installments of the note secured by this deed of trust, the Federal Land Bank of Houston, or its assigns shall have and is hereby given, the right to sell the property herein conveyed, in satisfaction of such defaulted payment, without declaring the whole debt due, such sale to be made upon the same terms and conditions, as to manner of advertisement, time and place of sale, etc., as is provided for in the event said bank exercises its option and declares the whole note due, save and except that where the sale is made because of the default of one or more of the semi-annual payments such sale shall be made subject to the unmatured part of the note secured by this deed of trust, and it is agreed that such sale shall not in any manner affect the unmatured part of the debt secured by this deed of trust, but as to such unmatured part this deed of trust shall remain in full force and effect, just as though no sale had been made under the provisions of this paragraph; and it is specifically agreed that no one sale under the powers conferred in this paragraph shall exhaust the right of sale under the powers conferred in the first preceding paragraph hereof relating to the maturity of the entire debt, nor shall one sale exhaust the power of sale to enforce the payment of any subsequently maturing installment, the payment of which may be defaulted, and it is agreed that an assignee holding any installment or installments of the note hereby secured, shall have the same powers as are hereby conferred on the Federal Land Bank of Houston to request the Trustee named herein, or his successors as herein provided for, to sell the property herein conveyed. * * * If the person or persons obligated to pay the indebtedness hereby secured shall demand that the excess land, if any, over the legal homestead be sold first, then such excess shall be first sold and the proceeds thereof applied, first: to the payment of the principal and interest due on the part of the debt hereby secured not represented by renewal of purchase money obligations, and, second: to the payment of the balance of the debt hereby secured. And in the event the proceeds of the sale of such excess land is not sufficient to discharge the entire debt hereby secured, including all costs and expenses legally chargeable, then the homestead tract shall be sold and the proceeds thereof applied to the discharge of the balance of principal and interest due on that part of the debt represented by the renewal of purchase money obligations, together with all costs and expenses legally incurred in the enforcement of this trust, and it is agreed that such sale may be made on the same date and by virtue of the same notice."

As we construe the language above copied, the parties to the original deed of trust have, by contract, determined their respective rights, in the situation presented by the facts

of this case. That being true, there is no occasion to resort to the rules of equity governing the rights of the respective parties to marshal assets. These rules of equity are applicable only in the absence of a contract. Where the parties themselves, as in this case, have, by contract, fully defined their rights, the court's duty is limited to an enforcement of the contract as written. The right to assign installment coupons and a portion of the lien securing same is expressly reserved, as is also the right of repeated foreclosures. There can, therefore, be no question of the right of defendant in error to maintain a suit for a foreclosure of a portion of the original lien securing the payment of the coupons assigned to it.

■■ Similarly, the right of the Boykins to demand that the excess land over the legal homestead be sold first is expressly reserved. That right existed against the Federal Bank as to all or any portion of the indebtedness owing to it. The State Bank is suing upon the contract in which that right was reserved. As assignee of the Federal Bank, it acquired only the contractual rights of its assignor. Its capacity in the suit is not so much that of a purchaser of the excess from Boykin as it is that of a purchaser of the lien from the Federal Bank. Its claimed equitable right as the owner of the excess to have the homestead sold first cannot be made to override the prior contractual right of Boykin to have the excess sold first in a suit, as is this one, founded upon the very contract creating Boykin's right. "Equity follows the law."

It is our opinion that the trial court erred in decreeing a foreclosure alone upon the 200-acre tract, but that the decree should have been as provided in the deed of trust. It is therefore our order that the judgment of the trial court be, and same is hereby, reformed, so as to decree that the 577-acre excess be first sold, and that, in event the proceeds of the sale of such excess be not sufficient to discharge the entire debt of $724.-18, including all costs and expenses legally chargeable, then the homestead tract shall be sold and the proceeds thereof applied to the discharge of said judgment. Should the excess sell for more than sufficient to discharge said judgment with costs, the balance shall be paid to defendant in error, but, should resort be had to the sale of the homestead after the sale of the excess, and should the proceeds of the sale of the homestead be more than sufficient to discharge said judgment, the balance shall be paid to plaintiff in error.

Reformed, and, as reformed, affirmed.

### On Rehearing.

■■ In its motion for rehearing the defendant in error presents that it has the equitable right to have the homestead of plaintiffs in error sold first, and that its equitable right is not affected by the contractual provisions of the deed of trust quoted in the original opinion. On the question of equities arising in a situation where homestead claimants have executed a second lien upon the excess land owned by them above that included in the homestead exemption, our Supreme Court, through Chief Justice Cureton, has rendered a rather exhaustive opinion in the case of Kerens National Bank v. Stockton, 120 Tex. 546, 40 S.W.(2d) 7, 11, 77 A. L. R. 362. The opinion states that it was the first time the question had been directly presented to that court. It quotes with approval the following: "This right of the homestead claimants, as we have seen, is one which they may exercise even to the detriment of junior incumbrances of the other lands. This is so, upon the principle that they have taken their junior incumbrances with knowledge of the existing equities which the homestead carries, amongst which is the important one to direct the senior mortgagee to have recourse first to lands other than the homestead."

And the following: "The claimants, in the absence of any expression of a contrary intent, should be presumed to intend no further peril to their homestead than necessity demands, while he who receives a mortgage from them should be regarded as obtaining a mere security for his debt, and not the right to employ that security in such a mode as to needlessly imperil the homestead."

This decision unquestionably establishes the law in this state to be that homestead claimants have a right to compel the prior mortgagee having a valid lien upon the homestead and excess land to have recourse first to the excess, even though such claimants have executed a valid second mortgage against such excess, and even though, by such sale thereof, the second lienholder loses his lien. The State Bank in this case was a junior mortgagee, and took its mortgage with knowledge of the valuable right possessed by its mortgagors to have the excess land first sold to apply upon the indebtedness secured by the first mortgage. Its equitable position was not altered by the fact that the trustee under its deed of trust sold the property and it became the purchaser thereof, for it had "not the right to employ that security in such a mode as to needlessly imperil the homestead." On equitable grounds we think the judgment heretofore rendered by this court should stand. We are more convinced of its correctness when we take into consideration the fact that the State Bank is here suing upon a contract which expressly granted that right to the Boykins.

■ In the case of Christoff v. Chesley, 11 Tex. Civ. App. 122, 32 S. W. 355, the court denied the right to have land sold in parcels when all the lienholders were not before the court. We are impressed by the soundness of that decision as applied to the facts of

that case, but in the instant case the contract upon which the State Bank bases its suit *would prevent the application of that rule.* That contract gave the right of successive foreclosures, and, in the same manner, gave the Boykins the right to have the excess land sold first. This latter right applied to all or any portion of the indebtedness owing to the Federal Bank. That right could not be defeated by assignments of portions of such indebtedness and the lien securing same and successive foreclosures of such portions. The State Bank took such second lien with knowledge of the fact that the Boykins had the right here asserted and, is declaring upon the very contract giving that right. If the value of the excess is no greater than the first lien against same, it never had any valuable lien. If that value is in excess of the first lien, it can still protect all the rights it ever had by discharging the first lien against same.

The motion for rehearing will be overruled.