**BURG v. HITZFELD et al.**
No. 9651.

Court of Civil Appeals of Texas. San Antonio.

Dec. 11, 1935.

Rehearing Denied Jan. 15, 1936.

J. B. Wieser, of Fredericksburg, for appellant.

H. H. Sagebiel, of Fredericksburg, for appellees.

BOBBITT, Justice.

This appeal presents a question concerning the rights of lienholders as against homestead rights, which apparently has not heretofore been squarely presented to the courts of Texas.

The material facts are undisputed. On February 6, 1918, Wesley Ellebracht and his wife, Ottilie Ellebracht, executed and delivered to the Federal Land Bank of Houston their note in the sum of $3,200, secured by a valid lien on a certain 300-acre tract of land in Gillespie county. The proceeds of the loan represented purchase money for the property, and is a first lien and superior to the homestead claims of the Ellebrachts. The north 200 acres of said tract of land were designated, and have at all times since been used and enjoyed, by the Ellebrachts as their homestead. This obligation was payable in annual installments, in conformity with the policy of the Federal Land Bank.

On September 28, 1929, the Ellebrachts borrowed $2,200 from Henry J. Burg, executing their note therefor, and secured the same by a deed of trust on the south 100 acres of said 300-acre tract, and expressly set forth in the instrument that the north 200 acres "is now used, occupied, and enjoyed by us as our homestead, and we now do hereby designate the said 200 acres as our homestead." There is no question that under such instrument Burg made the loan on a second and inferior lien against the 100-acre tract of land only, and with full notice of the then existing homestead claim of the Ellebrachts against the north 200 acres.

The Ellebrachts defaulted in the payment of the obligation to Burg, who filed suit thereon and secured judgment against the Ellebrachts, on the 19th day of August, 1932, for the full amount of his debt, the foreclosure of his second lien, and upon sale of the property thereunder acquired a sheriff's deed to the said south 100 acres, on October 4, 1932, since which time it appears that he has been in possession thereof.

The Ellebrachts also defaulted in their said debt to the Federal Land Bank, which held a concededly valid first lien on the entire 300 acres of land, and they appealed to the father of Ottilie and father-in-law of Wesley, William Hitzfeld, for assistance in their troubles with the bank.

Father Hitzfeld came to the rescue of his children, and, it is undisputed and clearly shown by the record, paid off the entire indebtedness to the bank, and acquired, by proper and valid transfers and assignments, all rights, title, liens, and interests theretofore held by the bank against the entire 300 acres of land. The children then defaulted in their payments to William Hitzfeld, who, on the 22d day of August, 1934, filed this suit in the district court of Gillespie county, asking judgment for the amount due under the assigned bank's indebtedness and lien, which he had duly and fully acquired; for foreclosure of his first and superior lien against the entire 300 acres of land, alleging that Henry J. Burg claimed some character of interest in a portion of said land, but asserting that his (Hitzfeld's) lien was superior and prior to all liens asserted to said land, or any part thereof, by Burg. Hitzfeld prayed that decree be entered and the property sold in accordance with law; that the purchaser of said land sold under such order of sale be placed in possession thereof, within the time and in the manner provided by law.

Wesley and Ottilie Ellebracht answered in said suit, admitting the indebtedness owing to Hitzfeld and that the lien securing the same was a valid and subsisting encumbrance against the entire 300 acres of land. The Ellebrachts set forth in their answer facts showing that soon after their marriage, and on the 15th day of January, 1915, they purchased and acquired the 300 acres of land here involved, immediately moved and established their home thereon, and have ever since and now live on said land, and that they have always claimed, and now claim, the north 200 acres thereof as their homestead, setting forth that they still resided thereon at the time of the trial, with their four children, all minors.

The Ellebrachts prayed judgment of the court that in the decree entered in favor of plaintiff, Hitzfeld, for his debt and foreclosure under his superior lien, the court order first sold the south 100 acres of said tract of land, and being that portion thereof not claimed or used by them as their homestead, and, if said 100 acres should bring sufficient money to satisfy plaintiff's claim, that the north 200 acres, the homestead, be not sold.

Henry J. Burg, who was made a party to plaintiff's suit, answered by general denial, and then by special answer, and contended that he held title to the south 100 acres described in plaintiff's petition, by purchase at sheriff's sale, on the 4th of October, 1932, reciting how he acquired title thereto, as above indicated.

Defendant Burg frankly admitted in his answer that the debt and lien formerly held by the bank and acquired by Hitzfeld, upon the whole of said 300-acre tract of land, had priority over his lien upon the 100-acre tract of land, acquired by him as above stipulated; but that Hitzfeld, at the time of acquisition of said bank lien, well knew of the claim and lien of defendant Burg upon the 100-acre tract of land, and well knew that the lien of defendant Burg and his asserted legal title to said 100-acre tract by virtue of the sheriff's deed thereto were virtually the sole and only source of protection and source of collection upon the debt held by defendant Burg; that Wesley Ellebracht was not possessed of other properties subject to execution, and that he was in fact insolvent; that plaintiff is the father-in-law of the defendant Wesley Ellebracht, and with the intent to defeat, by way of foreclosure of the prior lien secured from the bank and directing sale first of the 100-acre tract of land, not a part of the homestead and held by defendant, in first application and satisfaction of the debt owing on the land bank indebtedness, he did purchase and acquire the said lien and balance of the note held by the bank, and brought this suit for the sole purpose of depriving defendant Burg of his rights in the said 100 acres of land; that there is an understanding between plaintiff, his son-in-law, Wesley Ellebracht, and plaintiff's daughter, Ottilie Ellebracht, that no part of said 300-acre tract, except the 100 acres owned by defendant Burg should be sold under the pending foreclosure action, and that, after elimination of defendant Burg, the said 200-acre tract of land (the homestead) would be given back to Ottilie Ellebracht, the daughter of plaintiff. Defendant Burg further alleged that under such circumstances, in view of the two liens and two distinct rights, as existing in the 100-acre tract of land, it would be inequitable and utterly unjust to permit plaintiff to foreclose his lien on the whole tract and to sell and have levied upon and sold the 100-acre tract claimed by defendant Burg in first order, but that, in recognition of the rights of defendant

Burg, and in protection of his claim, any foreclosure decree of the court should require plaintiff to sell and offer for sale the 200-acre tract, the homestead, in first order, in satisfaction of plaintiff's demand, and, if the proceeds thereof should prove insufficient to cover the whole of plaintiff's demand, then only should the remaining 100 acres be sold in satisfaction of plaintiff's debt. Defendant Burg pleaded in the alternative that plaintiff, Hitzfeld, was in fact the owner of the 200-acre tract of land, having acquired same by purchase from the Ellebrachts, by virtue of his payment of the bank debt against the entire 300-acre tract, and alleged that the Ellebrachts had in fact conveyed the 200-acre tract of land by deed to Hitzfeld, in consideration of the cancellation of his note and indebtedness against the Ellebrachts, and that the whole of said original indebtedness against the 300-acre tract of land had been paid and extinguished. Pleading further in the alternative, defendant Burg, in order to protect himself against the loss of his entire interest or claim under his lien, in open court, offered plaintiff, Hitzfeld, the full sum of money justly due him on his claim acquired by his purchase of the bank indebtedness, together with all costs, and contended that "under the law and the application of the rules of equity he is entitled to and should be subrogated to all lien rights of plaintiff, William Hitzfeld, now possessed by him as holder and assignee of the Bank note and lien." Burg accordingly prayed: (a) For judgment that plaintiff take nothing against defendant and that he recover his costs; (b) in the alternative, that order of sale awarded plaintiff provide that the north 200 acres of said 300-acre tract be first sold in satisfaction of any demand due plaintiff, and, only in the event of insufficiency to cover in full any sum of money due plaintiff, the south 100-acre tract, possessed by defendant Burg, be sold next; and (c) in the alternative that defendant Burg be subrogated to all rights and liens of plaintiff, Hitzfeld, in the whole of said land upon payment by Burg of the full sum of money justly due plaintiff; the court so decreeing that the foreclosure action be dismissed without prejudice to all rights of defendant Burg.

Plaintiff answered defendant Burg's said pleadings by a general demurrer and general denial. The cause was tried by the court, without the intervention of a jury, and the court rendered judgment on the

30th day of August, 1934, finding and decreeing: That the plaintiff held a valid debt against defendant Wesley Ellebracht in the sum of $3,544.83; that payment of said debt was secured by a valid first lien on the entire 300-acre tract of land, describing the same; that defendant Wesley Ellebracht is the head of a family, and with his family resided on the north 200 acres of said land, describing same, and is entitled to have and hold said 200 acres as the homestead of himself and family, subject to the debt and lien of plaintiff; that the south 100 acres of said land is no part of the homestead of defendant Wesley Ellebracht, and that the defendant Burg has and holds title thereto, acquired through sheriff's sale on October 4, 1932, subject, however, to plaintiff's debt and lien; and that the defendant Henry J. Burg is not entitled to pay plaintiff, William Hitzfeld, the amount of his debt against Ellebracht and thereby becomes subrogated to the rights, claims, liens, and securities of the plaintiff against the 300-acre tract of land.

The court rendered judgment for the plaintiff against defendant Wesley Ellebracht for the full amount of his claim, together with interest and costs of suit, and ordered that the lien held by plaintiff on the whole tract of 300 acres of land, as it existed on January 19, 1918, and has ever since existed, be in all things foreclosed against all defendants; and directed the clerk to issue order of sale commanding the sheriff of Gillespie county to seize and sell, first, the 100-acre tract of land, describing the same, and providing that, if the proceeds of the sale of said 100 acres be sufficient to satisfy plaintiff's judgment in full, the officer shall not sell the remainder of said land; and, if the sale of said 100 acres shall bring more than sufficient to pay plaintiff's judgment in full, then such excess shall be paid over to defendant Henry J. Burg; but, if the proceeds of the sale of said 100 acres shall be insufficient to fully discharge plaintiff's judgment, then, and in that event, the said officer shall proceed to sell the north 200 acres of land, and being the homestead, describing the same, and to apply the proceeds of the sale of said 200 acres to the payment of the balance of plaintiff's judgment remaining unpaid after the sale of the 100-acre tract; and, if the proceeds of the sale of said 200-acre tract is more than sufficient to fully satisfy the balance remaining unpaid on plaintiff's judgment after having applied thereon the proceeds of the sale of the 100-acre tract, then such excess shall be paid by the officer executing said order of sale to the defendant Wesley Ellebracht. The judgment further provided for appropriate writs of possession, in accordance with its provisions and acts done thereunder.

Appellant presents only one assignment of alleged error on the part of the trial court in the entry of the judgment herein, which is contained in his first proposition, substantially as follows: Henry J. Burg, having pleaded and proved title to the south 100 acres of the 300-acre tract of land securing plaintiff's debt, acquired by virtue of a valid trust lien executed by common debtor, Ellebracht, foreclosure of such lien and purchase at sheriff's sale, defendant Henry J. Burg, in action of prior lienholder for debt against common debtor and foreclosure of superior lien against entire 300-acre tract of land, had the right to tender entire sum due plaintiff, pay off said prior lien in order to protect his own interest in the property, and in so doing become subrogated, under the law, to all rights of prior and first lienholder, and the trial court erred in denying Burg the right of redemption and subrogation.

With this proposition we cannot agree. Appellant, in his brief, correctly states the law of subrogation as it applies generally to the rights of junior mortgagees to discharge, upon payment of the full amount due, the senior or superior debt and lien against property on which they held second or inferior liens, for the purpose of protecting their own interests, and thereby become subrogated to all rights of the senior lienholders in respect to the mortgaged property. As a general rule, furthermore, where a person has a lien upon two or more funds to secure the payment of a debt, on one of which funds another person has a similar lien, the holder of the first lien is required to satisfy his lien, so far as he may be able, from those funds on which the other has no claim; and the same rule applies where the same person is the holder of the several liens in marshaling the assets so as to secure the satisfaction of all his claims. It is also true, ordinarily, that a creditor holding a junior lien on a part only of property encumbered by a prior lien has a right, under the equitable rule of marshaling assets and securities, to require the prior lien to be satisfied out of that por-

tion of the property not subject to his lien, and, if such property is insufficient to satisfy such prior lien in full, to have the proceeds of the sale of the same applied as a credit thereon. These rules are applicable and effective under general and ordinary circumstances, but they do not apply, and cannot be made effective, where the rights of the homestead and the exemption and safeguards surrounding the same may be destroyed or impaired.

■■ In the case at bar it is undisputed that appellant acquired only a second lien upon the south 100 acres of land here involved, and in the very instrument itself securing his debt it is set forth that the remaining 200 acres of land was claimed and actually being used as the homestead of the Ellebrachts. Appellant, therefore, had full and complete notice of the inferiority of his lien, not only to that of the first lien held at that time by the Federal Land Bank, but he is charged with full knowledge of the lawful rights of the Ellebrachts, in the protection of their homestead rights in case of foreclosure by the first lienholder against the entire 300 acres of land, to demand and require the nonexempt property to be first disposed of in an effort to discharge the debt against the homestead, before the homestead itself could be sold. In other words, appellant, at the time he made his loan to the Ellebrachts and secured his second lien on the nonexempt property to secure payment thereof, was charged, as a matter of law, with full knowledge of the constitutional and statutory safeguards surrounding homestead claims and rights, and that, as a second and inferior lienholder on a portion of property covered by a lien against the homestead and other property, that his second lien could never be asserted against the homestead as such, and that, in the enforcement of a superior lien against the homestead and other property, all other property must first be sold and the proceeds thereof applied in an effort to preserve and protect, as far as possible, the homestead. Appellant was charged, at the inception of his debt and second lien, with knowledge of the well-established rule in this state, that all nonexempt property of the debtor, both real and personal, must be exhausted before the homestead can be sold; and that a debtor may lawfully insist that recourse shall last be had to the homestead property, and that the lienholder whose security affects the homestead with other land shall resort, first, to the other lands, even though by so doing the security of other creditors on the same land may be impaired or destroyed.

It is the definitely settled policy of the state of Texas to encourage the acquisition of homesteads and to protect them from forced sale, where this can be accomplished without injustice to those who have acquired liens upon lands which are thereafter dedicated to homestead purposes. When the Ellebrachts established their homestead upon the lands theretofore mortgaged to the Federal Land Bank to secure the money with which to purchase the same, their homestead rights, as set forth in the Constitution and laws of Texas, and as those rights have been construed by the courts of our state, became absolute and perfect, with the sole and only exception that the mortgagee bank and its assignee had the legal right to collect the debt for the purchase price thereof from the proceeds of such land. If the collection of such debt can possibly be accomplished by a sale of the land not a part of the homestead, then equity, conforming to public policy and following the laws safeguarding homestead rights, requires that it shall be done. As above suggested, appellant was charged with knowledge of all such rights and safeguards relating to homestead claims when he made his loan and took his second lien securing the same, under the undisputed facts and circumstances of this case.

It is true that under some of the early decisions in the courts of Texas and under a particular state of facts junior lienholders were held entitled to the right and were awarded subrogation to the claims and liens of senior lienholders upon payment of the claims due them, even in some instances against homesteads. Such decisions have, however, been clearly and definitely overruled, and certainly since the decision of the Supreme Court, through an able and exhaustive opinion by Chief Justice Cureton, in the case of Kerens National Bank v. Stockton, 120 Tex. 546, 40 S.W.(2d) 7, 77 A.L.R. 1122, the rule favoring homestead rights, as above stated, and squarely against the contention of appellant herein, has been clearly established and followed.

■ Appellant earnestly insists that the Ellebrachts could not be in any way injured through his acquiring subrogation from appellee Hitzfeld, and that if the court, through the equitable claim asserted

by him, would give him such right of subrogation, he might be able to collect something on his claim. Obviously, he could not possibly gain any advantage toward the collection of his debt under the facts set forth in the record before us and under the law applicable thereto, and as above stated, except at the expense and to the detriment of the homestead of the Ellebrachts. Clearly, *all* of the property which secured the debt to appellant has been, by proper decree of the trial court, ordered sold and the proceeds therefrom applied on the entire debt and first lien lawfully held against the homestead, in an effort, and in full compliance with law, to save the homestead, if possible, from forced sale. It is apparent that appellant realizes that he has, in reality, no security for his claim; and he asks the court, in an effort to force appellee Hitzfeld, to transfer his valid lien against his daughter's homestead to him, in order that he may be able to subject it to the payment of a debt which, under the law of Texas, it is not called upon to pay. We know of no law or rule that authorizes or requires a court to compel subrogation in such a case as is before us. Appellant cites no authority which supports his contention. On the other hand, we feel and hold that every presumption and every fair and reasonable effort should be indulged and exercised to safeguard the homestead. Such is the law of this state. The homestead property of the Ellebrachts can never be charged with the payment of the debt or lien held by appellant on the 100 acres of land, not a part of the homestead. Appellant, through the judgment of the court entered herein, has received the only relief, and all the rights, to which he is entitled under the laws of Texas, in so far as the property involved herein is concerned, and under the facts and circumstances which he had a part in making. At the very time he made the loan, taking only a second lien on a small tract of land to secure the same, in the instrument fixing his security, he was notified definitely of his limitations to reach the homestead property and of the danger to his second lien. The homestead flag had been unfurled, and was flying high and clear, and in full view of all money lenders or others who might be in any way concerned with the property or the persons entitled to its protection, prior to and at the time appellant made the loan which he now seeks to collect. Appellant, therefore, has no lawful reason to complain of the situation in which he now unfortunately finds himself. The reference in his brief to the statement that his money was used in the improvement of the homestead is clearly and fully answered by the Constitution and laws of his state, which at the time afforded him a simple, lawful way to protect himself against loss in such instances. He could have secured a legal and enforceable contract, in the form of a mechanic's and materialman's lien, in accordance with the constitutional and statutory requirements relating to improvements to homesteads, which would have protected his investment in this regard. He did not choose to do so before he made the loan; and, in obedience to the laws of the state, the courts cannot now, directly or indirectly, make such protective contract for him. Appellant did not follow the laws of his state, which would have safeguarded his rights and afforded him protection in his transaction with the Ellebrachts. Equity follows the law. Equity aids the vigilant, not those who slumber on their rights. Equity looks on that done which ought to be done. There is, under the plain laws of our state, no equity in appellant's contention.

This suit is not solely a contest between money lenders or lienholders. The Ellebrachts hold, and have legally asserted, homestead rights herein, as provided for all who acquire such in this state. Their asserted rights the trial court and this court must and have duly considered. The exemptions provided for homesteads are afforded by the supreme law of the state and are superior to any claim or right of subrogation in favor of a creditor who has not recognized or followed the law in dealing with the property of the homestead.

In view of the particular facts of this case and by reason of the earnest and able presentation of his contentions in the brief filed herein by counsel for appellant, and because of the importance of the question, we have discussed appellant's proposition and contentions at length. Constitution, art. 16, §§ 50 and 51; articles 3832 to 3839, inclusive, R.S. 1925; Kerens National Bank v. Stockton, 120 Tex. 546, 40 S.W. (2d) 7, 77 A.L.R. 1122; Pridgen v. Warn, 79 Tex. 588, 15 S.W. 559; King v. Hapgood Shoe Co., 21 Tex.Civ.App. 217, 51 S.W. 532, 533; Henkel v. Bohnke, 7 Tex. Civ.App. 16, 26 S.W. 645, and authorities therein discussed. Simkins on Equity, c. 63, p. 613; 29 Corpus Juris, Homesteads, par.

242; 22 Tex. Jur. p. 11, etc., and authorities therein cited.

Under the above-cited authorities, and in view of the undisputed facts herein and the record before us, we find that the trial court committed no error in the entry of the judgment herein and that it should be in all things affirmed, and it is so ordered.