**In re Nick JULIAN d/b/a Nick Julian Motors, Debtor.**

**Nick JULIAN, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate Capacity for Continental National Bank, Dallas, Texas, Defendant.**

Bankruptcy No. 391–31640–RCM–7.
Adv. No. 392–3234.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Feb. 11, 1994.

Arthur F. Selander, Quilling, Selander, Cummiskey, Clutts & Lownds, P.C., Dallas, TX, for FDIC.

Roger A. Fuller, Law Offices of Roger A. Fuller, Dallas, TX, for Julian.

## MEMORANDUM OF OPINION ON HOMESTEAD

JOHN C. AKARD, Bankruptcy Judge.*

In this adversary proceeding the Debtor, Nick Julian, seeks to set aside a lien claimed by the Federal Deposit Insurance Corporation (FDIC) on property at 744 and 750 East Jefferson Blvd., Dallas, Texas. Mr. Julian asserts that the property is both his residential and business homestead.[1]

This case presents a myriad of issues, which the court will discuss along with the facts. There is little dispute between the parties about the events which transpired in this case. Their disagreement is over the conclusions to be drawn from those events.[2]

### 744 EAST JEFFERSON

Mr. Julian acquired adjoining tracts, known as 744 and 750 East Jefferson Blvd. in Dallas, Texas, in the 1960's. He leased the property to other parties at that time. In 1974, Mr. Julian began using 744 East Jefferson for his used car business; he continued leasing 750 East Jefferson until 1989, when he added it to his car lot. In 1969, Mr. Julian constructed a house on property he owned in a rural area near Cedar Hill, Texas, because he planned to marry and he and his wife moved there in mid–1969.

In 1976, Mr. Julian made a loan at the North Dallas Bank for $140,000 and pledged 744 and 750 East Jefferson as security. At that time he lived in the house near Cedar Hill. Under Texas law, a person may not have both a rural and an urban homestead. *Farrington v. First Nat'l Bank*, 753

---

* United States Bankruptcy Judge for the Northern District of Texas assigned to the Abilene, Amarillo, Lubbock and San Angelo Divisions, sitting temporarily in the Dallas Division.

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro*

*Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(B), and (K).

2. The court adopts the stipulated facts contained in the Pre–Trial Order filed on December 3, 1992, and will state only those facts necessary to a conclusion in this matter.

S.W.2d 248, 251 (Tex.Civ.App.—Houston [1st Dist.] 1988, writ denied); *First Nat'l Bank v. Nelson (In re Nelson)*, 134 B.R. 838, 844 (Bankr.N.D.Tex.1991) (stating that one may "not have both a rural residence homestead and an urban business homestead at the same time.") Consequently, the East Jefferson property was not Mr. Julian's homestead when he signed the North Dallas Bank deed of trust, and that deed of trust constituted a valid lien on the property.

The Julians lived in the house near Cedar Hill until Mr. Julian moved out in January, 1981, in anticipation of a divorce, and into an apartment on the 744 East Jefferson property. The couple were divorced in 1981. In early 1982, Mr. Julian added a second story to the 744 East Jefferson property. The addition contained 2300 square feet of living quarters, including several bedrooms and baths, an entertainment area with a bar, and a jacuzzi.

On August 9, 1984, Mr. Julian signed the note and deed of trust at issue in this case. The note was for $300,000 payable to the Wynnewood Bank. The FDIC is the present holder of that note and lien. Mr. Julian used $111,482.15 of that loan to pay off the North Dallas Bank note, and the bank released its lien.

■ The decision on the validity of the FDIC's lien on 744 East Jefferson is controlled by the Fifth Circuit case *Kennard v. MBank (In re Kennard)*, 970 F.2d 1455 (5th Cir.1992). Relying on well-settled Texas precedent, the *Kennard* Court held that a claimant may establish a homestead by showing both (1) overt acts of homestead usage and (2) intent on the part of the owner to claim the land as a homestead.

The required overt acts were clearly present in the case before the court. Mr. Julian moved into a small apartment on the 744 East Jefferson property in January, 1981. In early 1982, he began constructing larger living quarters by adding the second floor to the building on the property. On its completion he occupied the second floor, and he has resided there ever since. Additionally, Mr. Julian continued to conduct his used car business from that location. Mr. Moerbe, the Wynnewood Bank officer who initiated the 1984 loan, knew that Mr. Julian conducted his used car business and lived at 744 East Jefferson. In his testimony, Mr. Moerbe described visiting the business and living quarters before making the 1984 loan.

### Intent

■ In *Kennard*, the Fifth Circuit pointed out that "under settled Texas homestead law an 'investigation of intention need not be made when the land is actually put to homestead uses. Such actual use of the land is the most satisfactory and convincing evidence of intention.' " *Id.* at 1459 (citing *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 314 (Tex.Civ.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). Since Mr. Julian was using the 744 East Jefferson property as his homestead, the court need not investigate his intent. *See also Napier v. FDIC (In re Napier)*, 144 B.R. 719 (Bankr.W.D.Tex.1992).

However, for the sake of clarity and thoroughness, the court will address the FDIC's position with respect to intent. The FDIC points to a number of facts which, it asserts, indicate that Mr. Julian did not intend that the 744 East Jefferson property be his homestead.

1. Following their divorce, Mrs. Julian and the two minor children of the parties continued to occupy the house near Cedar Hill. From this fact, the FDIC concludes that Mr. Julian remained the head of the family and that the family resided near Cedar Hill. Other facts do not support that conclusion. The parties were divorced in the spring of 1981 and the divorce decree allowed Mrs. Julian to stay in the house until September, 1981. Instead of insisting that she vacate the property in September 1981, Mr. Julian allowed her and the children to remain in the house until she remarried in late 1991 or early 1992. Mr. Julian had his former wife sign a lease on the property in May, 1986, in order to avoid any potential adverse possession claim. The Texas Constitution has always allowed a homestead exemption for a family. In 1973, the Constitution was

amended to allow a homestead for a single adult. Thus, following their divorce in 1981, both Mr. and Mrs. Julian were entitled to claim a homestead. The residential homestead must be the place of residence. Mr. Julian resided at 744 East Jefferson, so the fact that his children and his former wife resided in the house near Cedar Hill is no indication that he did not intend to claim the 744 East Jefferson property as his homestead.

2. Following his divorce, Mr. Julian continued to claim the Cedar Hill property as his homestead for tax purposes. Mr. Julian testified that he thought he could not claim the Jefferson property as homestead for tax purposes because it was commercial property. Although an affidavit claiming property as homestead for tax purposes is some indication of intent, under Texas law it is not conclusive. *Nelson, supra,* 134 B.R. at 845 (citing *Connelly v. Johnson,* 259 S.W. 634 (Tex.Civ.App.—San Antonio 1924, no writ).

3. Mr. Julian listed the Cedar Hill property as his homestead on financial statements which he gave the Wynnewood Bank in 1980, 1981, 1982, and 1983. The loan application dated August 9, 1984, refers to the financial statement dated June 16, 1982. Mr. Moerbe testified he "assumed" the bank looked at the 1982 financial statement in making the loan, but he could not say for sure. Clearly the bank could not rely on a two-year-old financial statement in the face of the bank officer's actual knowledge that Mr. Julian lived and had his business at 744 East Jefferson. The court cannot find that the statements in the financial statements reflect an intent not to claim the East Jefferson property as homestead.

4. Mr. Julian claimed the Cedar Hill property as his homestead in these bankruptcy proceedings. He also claimed as exempt a "car lot and homestead" at 744 and 750 East Jefferson. The FDIC correctly points out that a debtor cannot have both a rural and an urban homestead. The court understands that the Trustee filed an appropriate objection to the claimed exemptions. In any event, the fact that Mr. Julian claimed both parcels as exempt evidences no lack of intention to claim the East Jefferson property as exempt.

In summary, the court finds that Mr. Julian's use and occupancy of the property at 744 East Jefferson clearly established that property as both a residence and business homestead. Nothing in his actions established a contrary intent. Therefore, the court finds that it was both his residential and business homestead at the time of the 1984 Wynnewood Bank loan.

### Estoppel

■ Next, the FDIC argues that Mr. Julian is estopped to claim the East Jefferson property as his homestead. In this regard the FDIC points to three things: a homestead affidavit dated September 10, 1987, the financial statements, and a statement in the 1984 deed of trust. In Texas, under limited circumstances, a homestead claimant's declarations made to the mortgagee prior to, or contemporaneously with, signing a mortgage contract may estop him from claiming a homestead exemption. *First Interstate Bank v. Bland,* 810 S.W.2d 277 (Tex.App.—Fort Worth 1991, no writ). However, Mr. Julian signed the 1987 homestead affidavit more than three years after the bank issued the loan in question. He gave it in connection with another loan he made at the Wynnewood Bank. Although it does list the Cedar Hill property as Mr. Julian's homestead, due to the fact that it was signed well after the 1984 loan, the 1987 homestead affidavit cannot work as an estoppel in connection with the 1984 loan. It is patently obvious that the bank could not have relied on it when it granted the 1984 loan. *See also Johnson v. Masterson Irrigation Co.,* 217 S.W. 407 (Tex.Civ.App.—Beaumont 1919, writ ref'd) (stating that when, at the time a deed of trust is executed, one is not occupying the land in controversy as homestead, but is living on other land claimed as homestead, and the party making the loan relied on express recitations, he is estopped from asserting homestead rights in the property).

■ With respect to the financial statements, Mr. Julian listed the Cedar Hill property as his homestead in several of them, both before and after the 1984 loan. The bank did not rely on the statements given in advance of the 1984 loan, and those given after that loan cannot work an estoppel as to the loan already made.

■ The 1984 deed of trust consists of three pages of fine print. Mr. Moerbe testified that it was prepared by the bank's attorneys. It contains the following language:

Mortgagor hereby declares and represents to Mortgagee that the mortgaged property forms no part of any property by Mortgagor owned, used or claimed as a business or residential homestead under the laws of the State of Texas.

This statement was not highlighted, or otherwise emphasized, in the deed of trust. The court heard no evidence that the bank relied upon this statement in the deed of trust. Indeed, the evidence was to the contrary. Mr. Moerbe testified that Mr. Julian was a good customer, and that the bank did not take the same precautions as it would have done with "someone off the street." Mr. Julian brought several accounts to the bank and, no doubt, the bank wanted to accommodate him. Mr. Moerbe did not discuss the matter of homestead with Mr. Julian. The loan application is dated on the same date the note is dated.

The FDIC asserts that because of the disclaimer in the deed of trust, Mr. Julian cannot offer evidence to show that the East Jefferson property was his homestead. However, the Fifth Circuit decided that position adversely to the FDIC in *Patterson v. FDIC*, 918 F.2d 540 (5th Cir.1990). The evidence on homestead was properly admitted.

■ A debtor cannot be estopped by reason of a prior designation or prior disclaimer from asserting homestead rights in land that he continuously and openly lived on and used and occupied as his homestead. *Kennard*, 970 F.2d at 1459; *Truman v. Deason (In re Niland)*, 825 F.2d 801 (5th Cir. 1987). In the instant case Mr. Julian openly and continuously lived on and used the 744

East Jefferson property as his residential and business homestead. Therefore, the disclaimer is not binding upon him. For these reasons, the court finds that the FDIC's lien on 744 East Jefferson is invalid.

## 750 EAST JEFFERSON

■ The property at 750 East Jefferson presents a different scenario. Although it adjoins 744 East Jefferson, Mr. Julian leased it to others from the time he acquired it in 1967 until 1989. In 1989, Mr. Julian began using it as part of his used car lot. Mr. Julian testified that prior to 1989 the business conducted at 750 East Jefferson benefited his used car business. However, use by a third party does not impress homestead qualities for Mr. Julian on the leased lot because, in order to claim a homestead in property, he must have a present possessory interest in the property. *Laster v. First Huntsville Properties Co.*, 826 S.W.2d 125, 130 (Tex.1991). Mr. Julian did not have that as long as he leased the lot to others. Under Texas law, homestead property may be leased to others without abandonment, but the lease must only be temporary. *In re Cooper*, 128 B.R. 632, 636 (Bankr.E.D.Tex. 1991) (citing *Duncan v. Woolf*, 380 S.W.2d 862 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.)). However, under the facts of this case, Mr. Julian's renting the homestead was not temporary, but, rather, a lease of commercial property to a third party. *See* TEX. CONST. art. XVI, § 51. The fact that, in 1989, the lot may have become part of the homestead does not destroy the validity of the 1984 lien on the property.

■ Citing *Taylor v. Freeland & Kronz*, — U.S. —, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), Mr. Julian asserts that the FDIC cannot contest his homestead claim to the East Jefferson property because it did not object to his claim of exemptions. This argument overlooks the critical dates. For bankruptcy purposes, exemptions are measured by reference to the law as of the date the bankruptcy petition is filed. *Taylor v. Knostman (In re John Taylor Co.)*, 935 F.2d 75, 78 (5th Cir.1991). *See also, Hrncirik v. Farmers Nat'l Bank (In re Hrncirik)*, 138 B.R. 835 (Bankr.N.D.Tex.1992) (stating that

"exemption rights in bankruptcy are determined as of the date the petition is filed."). The evidence showed that the property at 744 and 750 East Jefferson was Mr. Julian's homestead on the date he filed bankruptcy, but allowance of exemptions in bankruptcy does not destroy valid liens on the property. *See* § 522(c)(2) of the Bankruptcy Code.[3] Therefore, whether the FDIC retains a valid lien is measured as of the date of the lien, not the date on which Mr. Julian filed his bankruptcy petition.

### Subrogation Rights

■ The FDIC posits that it is subrogated to the liens held by North Dallas Bank because a portion of the proceeds of the 1984 Wynnewood Bank note paid off the 1976 note to North Dallas Bank. The Texas Supreme Court set out the principles of subrogation in *Fievel v. Zuber*, 67 Tex. 275, 3 S.W. 273 (1887) when it stated that "[a] party who has an interest in property to be protected by discharging an encumbrance upon it has the right to pay it, and to substitute himself to the rights of the lienholder, whether either the creditor or debtor give his assent or not." 3 S.W. at 275. The court noted that if a third party pays the entire debt pursuant to an agreement between the debtor and the third party, then the third party will be subrogated to the original creditor's rights and the courts will enforce the agreement. *Id.*

None of the documents submitted in evidence contained an express subrogation clause. Therefore, the court must examine the evidence for any implied intent of the parties regarding subrogation. Only three documents submitted contain any indication of the parties' intent on the question of subrogation. The first document is a title company closing statement which contains the language: "[p]ay off the North Dallas Bk $111,482.15." Mr. Julian denied that he signed the closing statement, although he was aware that a portion of the Wynnewood Bank loan proceeds would be used to pay off the North Dallas Bank note.

The second document is a Safeco Title Insurance Company form entitled "Affidavit as to Debts and Liens." The form contains the following statement:

There are no unpaid debts for plumbing fixtures, water heaters, floor furnaces, air conditioners, radio or television antennae, carpeting, rugs, lawn sprinkling systems, venetian blinds, window shades, draperies, electric appliances, fences, street paving or any personal property or fixtures that are located on the subject property described above, and that no such items have been purchased on time payment contracts, and that there are no security interests on such property by financing statement, security agreement or otherwise except as follows:

| SECURED PARTY | ORIGINAL AMOUNT |
|---|---|
| NORTH DALLAS BANK | 140,000.00 to be renewed and extended |
| AMERICAN BANK AND TRUST | 33,500.00 has been released |

Section 2 of the form is blank. Toward the bottom of the form there is a statement to the effect that the affidavit is made to the "purchaser and/or lender and to SAFECO Land Title of Dallas and SAFECO Title Insurance Company as an inducement to them to complete the above referenced transaction, and I/we realize that said purchaser and/or lender and title company are relying upon the representations contained herein...." Mr. Julian signed the form and it was notarized. However, the notarization does not state the name of the affiant or the county. The form is dated August 9, 1984, the date of the Wynnewood Bank note, and there is no evidence that the Wynnewood Bank relied on the affidavit when it decided to make the loan to the Mr. Julian.

The third document is a letter from Safeco Land Title of Dallas to North Dallas Bank which accompanied the check for $111,482.15 and a release of lien form for North Dallas Bank to execute. North Dallas Bank executed the release of lien and returned it to Safeco for recording.

Neither the Wynnewood Bank note nor the deed of trust, both prepared by the bank's attorneys, contained any reference to the

---

**3.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to

sections in the Bankruptcy Code.

North Dallas Bank note and lien. When Wynnewood Bank loaned Mr. Julian the $300,000, he appeared to have a prosperous business and the bank considered him a good customer. The loan amount was considerably greater than the amount needed to discharge the prior note on the East Jefferson property.

■ Texas courts have long recognized that one who pays off a prior lien with the express or implied consent of the owner of the property is subrogated to the rights of the original lienholder. In *First Nat'l Bank v. Ackerman*, 70 Tex. 315, 8 S.W. 45 (1888) the Texas Supreme Court said:

> The true principle . . . is that, when money due on a mortgage is paid, it shall operate as a discharge of the mortgage, or in the nature of an assignment of it, substituting him who pays in the place of the mortgagee, as may best serve the purposes of justice, and the just intent of the parties. . . . And it makes no difference, in either of these cases, whether the party, on the payment of the money, took an assignment of the mortgage or a release, or whether a discharge was made and the evidence of the debt canceled. . . . The debt itself may be held still to subsist in him who paid the money as assignee, so far as it ought to subsist in the nature of a lien on the land, and the mortgage be considered in force for his benefit, so far as he ought in justice to hold the land under it as if it had actually been assigned.

8 S.W. at 47 (citations omitted).

The Texas Court of Civil Appeals quoted, with approval, the American & English Encyclopedia of Law as follows:

> One who advances money to pay off an incumbrance on realty at the instance of either the owner of the property or the holder of the incumbrance, either on the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer, and, in the event the new security is for any reason not a first lien on the property, the holder of such security, if not chargeable with culpable and inexcusable neglect, will be subrogated

to the rights of the prior incumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby, and to this end equity will set aside a cancellation of such security, and revive the same for his benefit.

*Sanger Bros. v. Ely & Walker Dry Goods Co.*, 207 S.W. 348, 349 (Tex.Civ.App.—Fort Worth 1918, writ ref'd). *Accord, Houston Inv. Bankers v. First City Bank*, 640 S.W.2d 660 (Tex.App.—Houston [14th Dist.] 1982, no writ).

In the instant case, the parties stipulated that the Wynnewood Bank loan had two purposes: to refinance the North Dallas Bank loan, and to provide working capital for Mr. Julian's business. Mr. Julian knew the Wynnewood Bank intended to secure a first lien by the new deed of trust on the East Jefferson property. Under these circumstances, the Wynnewood Bank (and, thus, the FDIC) is subrogated to the lien of the North Dallas Bank.

## APPLICATION OF PAYMENTS

The note to the Wynnewood Bank is in default. The balance due is $269,992.49 plus interest, court costs, and attorneys' fees. The first step in determining how the payments under the note should be applied is to determine the enforceability of the Wynnewood Bank note and deed of trust.

### *Enforceability*

■ Mr. Julian signed the note and deed of trust, both dated August 9, 1984, in favor of the Wynnewood Bank. The deed of trust does not name a trustee. The acknowledgement on the deed of trust is dated and signed by a notary public, but it does not recite whose acknowledgement is being taken. The note and lien were renewed and extended by an instrument dated April 14, 1986, but the copy of that instrument introduced into evidence does not show an acknowledgement. Further, it is poorly drafted and the court feels it should not be relied upon.

Failure to name a trustee in the deed of trust does not invalidate the document, but requires the lender to seek judicial fore-

**486**

closure or reformation before a nonjudicial trustee's sale. *Kimberly Dev. Corp. v. First State Bank,* 404 S.W.2d 631, 637 (Tex.Civ. App.—Houston [14th Dist.] 1966, writ ref'd n.r.e.).

In Texas, instruments concerning property may be recorded if they are properly acknowledged. TEX.PROP.CODE.ANN. § 12.-001(a), (b) (Vernon Supp.1994). An unrecorded deed of trust is void as to a creditor or a subsequent purchaser for a valuable consideration who has no notice of it. TEX. PROP.CODE.ANN. § 13.001(a) (Vernon Supp. 1994). However, an unrecorded instrument is binding upon the parties. TEX.PROP.CODE. ANN. § 13.001(b) (Vernon 1984). Consequently, the Wynnewood Bank deed of trust is binding upon Mr. Julian and the bank. *Casbeer v. State Fed. Sav. & Loan Ass'n (In re Casbeer),* 793 F.2d 1436 (5th Cir.1986).

### Principal or Interest

■ The Wynnewood Bank note provides that the principal and interest is to be paid in monthly installments of $3,622.14 each, "said installments as paid to be credited first to the payment of interest accrued on the unpaid portion of the principal and second to the remainder of the principal." The Wynnewood Bank deed of trust provides: "Each installment as paid shall be applied first to payment of accrued interest and the remainder to be applied to the reduction of the principal."

Mr. Julian suggests that each monthly installment of $3,622.14 be applied to reduce the $111,482.15 paid to secure a release of the North Dallas Bank lien. In the alternative, he suggests that the installments be applied to interest on the $111,482.15, with the balance going to reduce the principal of that portion of the debt. He argues that, under either of these scenarios, the full $111,482.15 is paid and, thus, the 744 East Jefferson property has been released from the FDIC's lien. This argument ignores the plain language of both the Wynnewood Bank note and deed of trust. The parties are free to direct, by contract, how the payments are to be applied and, having so contracted, they are bound by that agreement. *Lewis v. In-*

*vestors Sav. Ass'n,* 411 S.W.2d 794, 798–99 (Tex.Civ.App.—Fort Worth 1967, no writ).

■ The allocation of the payments on the principal presents another problem. The Wynnewood Bank note was for $300,000. The principal balance due is $269,992.49, a reduction of $30,007.51. Both instruments are silent as to the application of principal. The FDIC notes that the North Dallas Bank deed of trust contained a provision that, if its lien is unenforceable as to any part of the mortgaged premises, all payments are to be first applied to the unsecured portion of the indebtedness. It asserts that it is subrogated to all the rights and remedies conferred by the North Dallas Bank deed of trust and, as such, should have the principal reduction applied to the unsecured or nonhomestead portion of the loan. It is true that the FDIC is subrogated to the North Dallas Bank deed of trust, but only insofar as it relates to the funds paid to the North Dallas Bank. Those rights and remedies cannot be expanded to include the additional sums the Wynnewood Bank advanced. This court has not found any infirmity in the North Dallas Bank note and lien. Therefore, the provisions in the North Dallas Bank deed of trust concerning the invalidity of its lien or an unsecured portion of the note are inapplicable in this case.

■ The FDIC asserts that, since Mr. Julian did not direct the application of the payments as they were made, the Wynnewood Bank (and, thus, the FDIC) can apply those payments first to the unsecured or nonhomestead portion of the lien, thus preserving the full $111,428.15 lien against the homestead. In support of its position, the FDIC cites *Bancroft v. Welch,* 250 S.W.2d 285, 289 (Tex.Civ.App.—Eastland 1952, no writ) and *Foxworth–Galbraith Lumber Co. v. Southwestern Contracting Corp.,* 165 S.W.2d 221, 225 (Tex.Civ.App.—Fort Worth 1942, writ ref'd w.o.m.). Both cases stand for the proposition that if the payor does not designate application of the payments, the lender may apply them first to the unsecured portion of the indebtedness. However, neither case discussed whether the property in question was the payor's homestead. When the homestead is involved, Texas courts have

applied the payments to reduce the lien on the homestead:

> If property is covered by a lien upon the homestead which is valid in part and void in part, and a payment is made without specific directions as to its appropriation, it would be fair for the court to apply it to the extinguishment of the lien....

*Wingate v. People's Bldg. & Loan Sav. Ass'n,* 15 Tex.Civ.App. 416, 39 S.W. 999 (1897, no writ). Therefore, the court holds that with respect to the property at 744 East Jefferson, which was Mr. Julian's residence and business homestead at the time of the Wynnewood Bank note, the FDIC, as the present holder of the Wynnewood Bank note and lien, has a valid lien to the extent of $81,474.64 (the $111,482.15 Wynnewood Bank paid to secure a release of the North Dallas Bank lien, minus the $30,007.51 principal reduction).

### Effect of Lien on 750 East Jefferson

■ The remaining question is the effect of the FDIC's lien for the full amount of its debt on the 750 East Jefferson property. Neither party presented any evidence on the value of this property. Where a lien is secured by both homestead and nonhomestead property, the debtor has a right to have the nonhomestead property sold first. *King v. C.M. Hapgood Shoe Co.,* 21 Tex.Civ.App. 217, 51 S.W. 532, 534–35 (1899, no writ). The FDIC asserts that Mr. Julian waived that right in the Wynnewood Bank deed of trust which states:

> It is agreed that said Trustee, or his successor or substitute, may sell said mortgaged property either as a whole, or in lots or parcels, as may seem expedient to either said Trustee or the Mortgagee (all rights to the marshalling of assets of Mortgagor, including the property hereinabove described, being expressly and specifically waived herein by Mortgagor, on behalf of himself, his heirs, assigns and legal representatives).

In support of this position, the FDIC cites *Boykin v. First State Bank,* 61 S.W.2d 126 (Tex.Civ.App.—Eastland 1933, no writ). In *Boykin,* a creditor sought to have a prior lienholder foreclose first on the homestead in order to protect the creditor's junior lien. The court of appeals held that the parties had fully contracted for their rights and, thus, there was no need to resort to the equitable doctrine of marshaling to determine the rights of the parties. The court enforced the contractual provisions which protected the homestead by requiring foreclosure first on the nonhomestead property. The *Boykin* Court followed well-settled Texas legal precedents in protecting the homestead. Consequently, *Boykin* does not support the FDIC's position.

■ The rules of marshaling are "applicable and effective under general and ordinary circumstances, but they do not apply, and cannot be made effective, where the rights of the homestead and the exemption and safeguards surrounding the same may be destroyed or impaired." *Burg v. Hitzfeld,* 89 S.W.2d 272, 276 (Tex.Civ.App.—San Antonio 1935, writ dism'd). "[E]very presumption and every fair and reasonable effort should be indulged and exercised to safeguard the homestead." *Id.* at 277. Therefore, this court holds that the FDIC must foreclose on the 750 East Jefferson property first, and apply the amounts received to the amounts due to it under the Wynnewood note, including costs, attorney's fees, interest, and principal, in that order. Thereafter, it may foreclose against the 744 East Jefferson property for remaining amounts due, if any, but not to exceed $81,474.64.

JUDGMENT ACCORDINGLY.[4]

---

4. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014. This Memorandum will be published.