**TODD v. HUNT et al.**

No. 3799.

Court of Civil Appeals of Texas. El Paso.

March 2, 1939.

Rehearing Denied April 13, 1939.

S. D. Hopkins, of Corpus Christi, for appellant.

Martin A. Row, J. W. Timmins, and T. L. Foster, all of Dallas, Gaines, Gaines & Roberts and Boyle, Wheeler, Gresham & Terrell, all of San Antonio, J. W. Ragsdale, of Victoria, James G. Cook, of Sinton, R. A. Weinert, of Seguin, and J. V. Wheat, of Houston, for appellees.

WALTHALL, Justice.

L. H. Todd, plaintiff in the trial court, appellant in this appeal, brought this suit against J. M. Hunt and H. F. Hunt and a number of other parties as defendants, appellees here.

Plaintiff's first amended original petition is in two counts, the first count is in trespass to try title, and in the second count plaintiff undertakes to set aside a trustee's deed to the land involved by reason of the grounds pleaded.

The lands sued for is described as: All of lots 5 and 6 in Section 34 of the fourth subdivision of the Taft Farm Lands, as shown by the Coleman-Fulton Pasture Company's map of the Taft Farm Lands, containing 146.14 acres of land, more or less, situated in San Patricio County, Texas.

The second count in the petition sets out many special issues involving the construction of a deed of trust which was foreclosed and the land sold; the construction of a power of attorney; the construction of the trustee's deed; the construction of the written assignment of certain installment payments from the Federal Land Bank of Houston, Texas, to the Sinton National Farm Loan Association, as well as its delivery by the Bank and its acceptance by the Association; and other issues appearing in propositions submitted.

In explanation of the above statements from appellant's brief, we make the following statement from appellees' brief:

The appellant, Todd, plaintiff in the trial court, on January 19, 1929, borrowed $6000 from the Federal Land Bank at Houston, Texas, through the Sinton National Farm Loan Association and, to secure the indebtedness, on said date Todd and wife executed and delivered to M. H. Gossett, Trustee, a deed of trust covering the land involved in this suit. The $6000 loan was repayable on the amortization plan in seventy-two semi-annual payments.

The first five semi-annual installments of the $6000 loan were not paid and went delinquent and on February 12, 1932, the Federal Land Bank of Houston assigned said five delinquent installments, together with the pro rata part of the deed of trust lien, to the Sinton National Farm Loan Association.

Todd testified that he was in possession of the land until the Association closed him out. J. M. Hunt, one of the appellees, who, with his brother, H. F. Hunt, later purchased the land from the Association, testified that Todd moved off of the land about a year before they, Hunt brothers, bought the place and took possession; and that before the Hunt brothers bought the land from the Association he, H. F. Hunt, had a conversation with Todd in which Todd told him that he was going to lose the land and was going to have to move off and give it up; and that Todd did move off with all of his stock about two months later.

On February 16, 1932, M. H. Gossett, Trustee, executed and delivered to C. I. Albertson a power of attorney authorizing Albertson to act as Trustee under him and in his name, place and stead.

On April 5, 1932, the said Albertson, as agent and attorney-in-fact for the Trustee, offered the land for sale at the courthouse door at Sinton, Texas, after having given the proper notices, and sold same to the Sinton National Farm Loan Association for $500 cash, and subject to the balance due the Federal Land Bank of Houston.

On April 8, 1932, the said Albertson, as agent and attorney-in-fact for the Trustee, executed and delivered to the Sinton National Farm Loan Association, as grantee, one of appellees, a deed of said land, subject to the remaining indebtedness due to the Federal Land Bank of Houston.

On November 26, 1932, the Sinton National Farm Loan Association deeded the land to J. M. Hunt and H. F. Hunt, two of appellees, subject to the balance remaining unpaid on the $6000 amortization note executed by Todd to the Federal Land Bank of Houston.

J. M. Hunt and H. F. Hunt paid the balance due on the $6000 note to the Federal Land Bank of Houston.

Hunt brothers moved on to the place when they bought the land and on July 1, 1933, they executed and delivered to Homer P. Lee, as lessee, an oil, gas and mineral lease, which lease was assigned by the said Lee to Sun Oil Company, an appellee herein, on July 31, 1933.

Hunt brothers thereafter sold a portion of the minerals in the land, subject to the oil and gas lease, together with a portion of the royalty provided for in the lease, and the numerous other appellees herein are such royalty owners holding title under Hunt brothers by virtue of numerous such mineral and royalty deeds.

Oil was discovered on the land in 1935 and eight producing wells were drilled thereon by Sun Oil Company prior to 1937.

This suit was thereafter filed by Todd, appellant herein, as plaintiff in the trial court, upon two counts, the first being in trespass to try title, and the second to cancel and set aside the trustee's deed of the land.

The judgment of the trial court of March 9, 1938, was that plaintiff, Todd, take nothing.

Appellant's contentions apparently are, in general, that the deed of trust executed by appellant did not authorize the foreclosure; whereas, appellees' contention is that the deed of trust did authorize the foreclosure and each and every step of it and that the foreclosure did divest appellant of all the title to the land and that appellees were entitled to their judgment upon the showing of legal title out of appellant.

## Opinion.

Appellant's first three propositions have reference to the common source of title to the land in controversy.

As in the above statement, appellant sued in trespass to try title and to cancel and set aside a trustee's deed made under a deed of trust by appellant and wife. The record shows that all appellees deraign title through the deed of trust and the trustee's deed thereunder, and therefore deraign title through appellant, being the same title, as we view it, which appellant offered for common source purposes. Appellees admit that appellant had title at the time he and his wife executed the deed of trust, and appellees' contention here is that they acquired appellant's title through the foreclosure of the deed of trust which appellant executed to the Federal Land Bank of Houston.

The law seems to be as stated in 41 Texas Jurisprudence, at page 513, that, "where the defendant deraigns title from the plaintiff, the latter is the common source of title," and refers under paragraph 44 to a number of cases as so holding, among them Temple Lbr. Co. v. Arnold, Tex.Civ. App., 14 S.W.2d 926. We think appellees' burden was fully discharged as to common source when they showed they had appellant's title directly from him through the trustee's deed.

The deed of trust executed by appellant and wife to the Federal Land Bank of Houston is too lengthy to quote here, and for that reason we state only such of its provisions, without quoting them, as are applicable to the propositions presented.

The assignment of delinquent installments from the Federal Land Bank of Houston to the Sinton National Farm Loan Association was authorized by the deed of trust executed by the appellant.

The record shows, and appellant testified, that he borrowed the $6000 secured by the deed of trust, through the Sinton National Farm Loan Association, the deed of trust reciting that the Association endorsed the loan. The deed of trust also recites that all of its terms and provisions are governed by the Federal Farm Loan Act (39 Stat. 360, 12 U.S.C.A. § 641 et seq.). The deed of trust itself shows that it was

executed to secure the one note for the sum of $6000, "conditioned for the payment of said sum and interest on the amortization plan, in seventy-two semi-annual payments," etc. The deed of trust, by its terms, specifically provides for the assignment of one or more of the semi-annual installments, and by its terms specifically authorized a foreclosure sale when requested by an assignee holding any installment, to satisfy delinquent installments, and subject to the unmatured part of the debt.

The Federal Land Bank of Houston, for a consideration, assigned to the Association said five delinquent installments, subject to the unmatured balance.

Appellees concede, as submitted by appellant, that the powers given by the deed of trust are strictly construed, but contend that none of the cases cited by appellant are authority for any proposition that what was done under the deed of trust was not authorized by the deed of trust; but submit that everything done under the deed of trust was authorized by it.

Some of the matters urged by appellant are that the assignment of delinquent installments creates a second lien, is a subrogation agreement, and that it is not authorized by the deed of trust.

The deed of trust by its terms specifically authorizes a sale to satisfy delinquent installments, subject to the unmatured balance, and without declaring the unmatured balance of the debt due.

In Boykin v. First State Bank of Comanche, Tex.Civ.App., 61 S.W.2d 126, 129, it is said: "Where the parties themselves, as in this case, have, by contract, fully defined their rights, the court's duty is limited to an enforcement of the contract as written. The right to assign installment coupons and a portion of the lien securing same is expressly reserved, as is also the right of repeated foreclosures."

Appellant submits that the assignment of delinquent installments is a subrogation agreement that should have been established by a judicial proceeding and therein foreclosed.

■■ The deed of trust as submitted by appellees authorizes the subrogation of the delinquent installments to the unmatured balance when it authorizes a sale subject to the unmatured balance. The deed of trust does not by its terms require a judicial foreclosure, but does authorize a trustee's foreclosure to satisfy delin-

quent installments subject to the unpaid balance. Appellant specifically contracted for the procedure taken in the case.

■ We do not find, as insisted by appellant, that the defaulted payments were paid by a stranger. The deed of trust recites, and appellant admitted, that he borrowed the money through the Association endorsing the loan. Section 921 of 12 U. S.C.A., the Federal Farm Loan Act, enjoins upon the Association to make good on the defaulted payments.

Appellant contends there was no compliance with the statutory registry laws of this State, in that the assignment of the delinquent installments was not immediately recorded, and, for that reason, "was barred from lapse of time."

■ We have found no such provision in the Federal Farm Loan Act, or elsewhere, to support the contention, and appellant cites no authority. The proposition is not sustained.

The record shows that on February 16, 1932, H. M. Gossett, trustee in the deed of trust, executed and delivered to C. I. Albertson a power of attorney authorizing Albertson to act as trustee under him and in his name, place and stead. On April 5, 1932, said Albertson, as such agent and attorney-in-fact for the trustee, offered the land for sale at the courthouse door at Sinton, Texas, after proper notices, and sold the land involved here to the Sinton National Farm Loan Association for $500 cash, and subject to the balance due the Federal Land Bank of Houston. Thereafter, on April 8, 1932, Albertson, as agent and attorney-in-fact for the trustee, executed and delivered to the Sinton National Farm Loan Association a deed to said land, subject to the remaining indebtedness due the Federal Land Bank of Houston.

■ Appellant questions the power of Albertson and his acts as above under the deed of trust, to convey the land and the mineral interest therein.

We quote only a portion of the deed of trust which has direct application to the point made. The deed of trust provides: "And the said trustee, or any substitute or successor trustee, is hereby authorized and empowered to appoint an attorney-in-fact to act as trustee under him and in his name, place and stead, such appointment to be evidenced by an instrument signed and acknowledged by said trustee, substitute or successor; and all acts done by

said attorney-in-fact shall be as valid, lawful and binding as if done by said trustee, substitute or successor, in person." The record does not disclose that any substitute trustee had been appointed. There is also in the deed of trust, without quoting the stipulation and agreement at length, that in case of any sale, all prerequisites incident to said sale shall be presumed to have been performed and shall be taken in all courts as prima facie evidence that the facts so stated are true. We have found no evidence in the record to the contrary.

On November 26, 1932, appellee Loan Association sold the land to appellees J. M. and H. F. Hunt. Other appellees hold the mineral interests they claim under J. M. and H. F. Hunt or their assignees.

 It seems to us that the foreclosure under the deed of trust conveyed all interest of appellant in the land including the mineral interest. We have not found in the record any lease which might have been in existence at the time of the execution of the deed of trust. Nor is there in the foreclosure sale any reservation of any interest whether in mineral or otherwise.

Some of appellant's propositions not specially discussed involve in legal effect the same principle as those discussed, and we have not thought it necessary to discuss them separately. We have considered each of appellant's propositions, and have found none which, in our opinion, show reversible error and they are overruled.

The case is affirmed.