### CITY OF EL PASO et al. v. LONG.
#### No. 4522.

Court of Civil Appeals of Texas. El Paso.
Sept. 18, 1947.

Rehearing Denied Oct. 16, 1947.

PRICE, Chief Justice.

This is an appeal from the judgment of the District Court of El Paso County, 65th Judicial District. A. D. Long, as plaintiff, instituted a suit in trespass to try title against the City of El Paso, the County of El Paso and Dr. George W. Cox, as defendants, seeking the recovery of certain property just outside the city limits of the city of El Paso, and upon which was situated a hospital building. Trial was before the court without a jury, and judgment was in favor of plaintiff decreeing the recovery of the premises, subject to a certain lease held by the State of Texas and denying the City and County the relief jointly sought by cross-action. The City and County have perfected this appeal.

Dr. Cox's answer consisted of a disclaimer, followed by a plea of not guilty; El Paso County adopted the answer of Dr. Cox; the City plead not guilty and general denial, and then adopted the answer of Dr. Cox. Subsequently the City and County, purporting to act in their own behalf and also through the City and County Health Department, filed a cross-action stating that they had exercised an option to purchase granted in paragraph 2 of the contract referred to in the pleadings "and tender is hereby made in court of the full amount owing to said plaintiff Dr. Long under and by virtue of such option, and said parties stand ready and willing and able to carry out their part of said option to purchase, but that plaintiff refused to accept said tender." Specific performance of the contract was sought. It is thought that defendants sought to enforce a contract to purchase the property sued for. This is by no means a necessary inference from the allegations of the cross-action.

Plaintiff filed answer to the cross-action, and among other things alleged that for fifteen years prior to March 1, 1943, the property in question had been his and his wife's homestead, and also plaintiff during said time had operated a tubercular sanitorium in said buildings; that said buildings had only been temporarily rented and never been abandoned as homestead.

On motion of appellants the court filed findings of fact and conclusions of law.

Travis White and Ernest Guinn, both of El Paso, for appellant.

Cunningham, Ward & Cunningham, of El Paso, for appellee.

It was found that the "land described at all times is and was the homestead of plaintiff and his wife."

Appellant urges two points of error. In substance, that the court erred in refusing to specifically enforce the contract to convey the property, and the court erred in holding the property requested was the homestead of Long and wife. There is no material conflict in the testimony, but it is thought that different inferences are deducible therefrom, and that the material issues were for the trial court.

On March 1, 1943, the State of Texas, acting through her Health Department, entered into a contract with appellee. In substance, the State was granted the right to use and occupy the property in controversy for the existing emergency as declared by the President on September 8, 1939, and for six months following the termination thereof; "said term to run co-extensively with and subject to present and future allotment of available funds from the Government of the United States as aforesaid, for the continuance and operation and maintenance of said described Public Works." A short interim term was provided for, and it was provided that such interim term shall be automatically extended and be in force and effect for a period of one year from August 31, 1943, to September 1, 1944, and for such successive yearly period thereafter during the existence of said emergency and six months thereafter (provided an allotment of funds to operate and maintain such public works for each granted yearly period is available). It was contemplated that these hospital facilities should be used as a venereal clinic by the State, under the supervision of the United States Military Health Department. The State assumed no unconditional obligation to pay rent for the premises; her obligation was to pay $500 per month if the Federal Government made allotment for that purpose. It is thought under the lease that same expired by limitation when and if the Federal Government failed to make funds available for the payment of the $500 per month. The clinic thereafter conducted in the building was to a large extent conducted at the expense of the United States. The State, out of funds furnished by the United States Government, paid the rent of $500 per month until about July, 1946. From about July or August 1, 1946, the State paid the $500 rent up to March 1947 with funds furnished by the appellants. Whether or not any rent has been tendered or accepted since March 1947 does not appear from the statements in either brief.

Prior to removing from the premises, appellee on March 1, 1943, the date of the lease, filed in the County Clerk's office an instrument purporting to designate the property in question as his homestead. This instrument recited that he had only temporarily rented the property for war purposes and intended to re-occupy the same as a homestead. This instrument is, of course, of no legal efficacy and it is not contended that it is. It is perhaps evidentiary as to the intention of appellee.

While possession of the hospital was delivered on March 1, 1943, appellee and his wife did not move therefrom until about March 14, 1943. On the latter date appellee's wife purchased and had deeded to her a residence in the city of El Paso; about said date appellee and his wife moved into the same and have occupied the same to this date. In March 1944, to obtain exemption from taxation, appellee filed with the Tax Collector of El Paso County an affidavit stating that this property was his homestead.

Appellee testified he never intended to abandon said property as his homestead, and intended to remove his business there and his occupancy of same as his residence. In substance this was the finding of the trial court. The provision in the lease relied upon by appellants is as follows: "Option Contractor herein grants to the department or its local governmental branch, the El Paso City-County Health Department, the option to purchase said public works comprising said plant and entire equipment, at any time prior to the termination of possession hereun, for the agreed sum of $50,000.00 less all rental paid to contractor in accordance with this agreement, such balance remaining of said $50,000.00 to be paid, upon the exercise of this option, to be paid the contractor with 4% interest from this date, whereupon

said contractor shall execute all necessary papers and deliver to purchaser good and merchantable title in and to said public works."

It is to be observed that neither of appellants is a party to the lease. Neither is named therein; there purports to be an option granted to the State or El Paso City-County Health Department. Art. 4436a—1, Vernon's Civil Statutes, provides for joint City-County Health Units in counties containing a city having a population from 90,000 to 120,000. It does not appear from the statements that such a joint unit had been organized, but it perhaps inferentially appears from the statement of facts.

█ For the purpose of this discussion let us assume that a joint option to purchase was attempted to be given to the City and County. The right attempted to be given the State or the City and County is indefinite in that one or the other is given the right to acquire title by conforming to the option, but which one is not specified. If the option be a valid option, either the State or the City or County would have a right to comply with the option to purchase the property. It is not provided which optionee shall have the prior right to purchase, and no means is provided for determining this question between the alternative holders of the option. However, let it be assumed this option was not so indefinite in this respect it could not be enforced. By the express terms of the so-called option, same was to be exercised by the optionee paying the appellee the sum of $50,000, less the rental paid to appellee in accordance with the lease agreement, the balance to be paid appellee with 4% interest from March 1, 1943, "whereupon said contractor shall execute all necessary papers and deliver to purchaser good and merchantable title in and to said public works." To mature this option into a contract to purchase the property it was absolutely essential that the appellants make the payment in cash to appellee before he was required to execute a deed conveying good and sufficient title. Killough v. Lee, 2 Tex.Civ.App. 260, 21 S.W. 970; Dreyfuss & Son v. Benson, Tex.Civ.App., 239

S.W. 347, Writ Referred; Waterman v. Banks, 144 U.S. 394, 12 S.Ct. 646, 36 L.Ed. 479; 55 Am.Jur. p. 511, Sec. 41.

█ Under the statements of the brief there is no showing that appellants have ever paid the cash or made an unconditional legal tender thereof. The statement of facts reflects that on January 7, 1947, the County Judge wrote a letter to appellee stating that it withdrew its offer to waive the option on payment of $3,000, and notified appellee that the county and city expected to exercise their option. Beyond question this notice did not create a contract binding appellee to convey the property to the city. On December 26, 1946, Reuben Momsen, Esq., purporting to act upon behalf of appellants, addressed a letter to appellee in which appellee was advised that the City and County desired to purchase the property under the terms of the option. It further requested that the appellee submit abstracts for his examination. This letter contained an offer that the city and county would waive the option if the appellee would pay them $3,000. Three thousand dollars seems to be the amount of rental paid by the city and county through the State Health Department.

This notice created no legal right. This option could not be exercised by a mere notice of intention to exercise same. Appellants had no right to demand an abstract. If appellee ever waived the legal tender, appellants failed to plead such waiver or point out in their statement any waiver. It nowhere appears that appellants unconditionally parted with the cash which they were bound to pay appellee before being entitled to a deed. There is no evidence that same was paid into the registry of the Court.

Appellants' pleading of tender is very meagre. Nowhere is there statement of the amount tendered averring that the amount is the amount due appellee under the option; nowhere under the statements in the brief is the amount conceded due appellee stated. It was appellee's right to have the consideration paid him in legal tender before delivery of deed to the property. There was no evidence in the record that

any sum of money was ever paid into the registry of the court. In order to create a binding contract, appellants before the expiration of the emergency and six months thereafter must have made an unconditional legal tender. The same had not been waived; the emergency by Presidential proclamation made in December was declared to be at an end on January 1, 1947.

It is thought that appellants have failed to show such a compliance with the option as to entitle them to specific performance. However, this case was tried on the theory that appellee had never abandoned this property as a homestead. It is undisputed that this property was the urban homestead of appellee and his wife at the time the option to purchase was given. It constituted their residence, and further it was a business homestead because therein the head of the family exercised his business or calling. Constitution, art. 16, Sec. 51, Vernon's Ann.St. Under the above cited provision of our Constitution the urban homestead while a unit, may consist of two separate pieces of property. By the same token, a business homestead may exist without a residence homestead.

A residence homestead may exist without a business homestead. It is likewise thought that where a business homestead and residence homestead are in the same structure, that the residence homestead may be abandoned by acquisition of another, and the business homestead retained, or the business homestead may be abandoned and the residence homestead retained. Constitution, art. 16, Sec. 51; 22 Tex.Jur. p. 275, par. 192.

A husband acting in good faith has a right to select the homestead. His execution of a lease on the homestead containing an option is evidence of intention of the husband to abandon the property as a homestead. However, such evidence does not as a matter of law establish the abandonment of the homestead. The question of whether a homestead is abandoned by the temporary renting thereof if the same be either a business or residence homestead is ordinarily a question of intention. The fact that appellee ceased to occupy the homestead on the execution of the lease or contract with the State does not constitute abandonment as a matter of law. The Constitution creating the homestead right provides in substance that the temporary renting of same shall not amount to an abandonment. The following authorities are deemed to sustain the holding that the question of abandonment was an issue of facts under the evidence. The trial court on sufficient evidence in our opinion resolved the question against appellants.

Constitution, Sec. 51, art. 16.

A court of equity will not specifically enforce the contract of the husband to convey the homestead; will not decree specific performance even though he be joined by his wife in an executory contract to sell the homestead. 22 Tex.Jur. p. 112, par. 78. The County, at least, expressly disclaimed any title and interest. It claimed not title, but a right to acquire title, while the city does not disclaim title and only claims a right to acquire title.

In trespass to try title, the issue is as to title and possession. To maintain same there should be a present legal right to possession with such title to render such possession lawful. Appellants do not complain that the court awarded title subject to a right of possession of the state. If the judgment was erroneous in this respect, appellants do not complain thereof, and perhaps regardless of the pleadings are not entitled to complain.

Under the Constitution creating the homestead exemption it is provided that temporary renting shall not impair the exemption. The ultimate question to be resolved is as to whether claimant intended to resume the possession of the premises as a homestead. Thornton v. Wear, Tex. Civ.App., 202 S.W. 1038; Rancho Oil Co. v. Powell, 142 Tex. 63, 175 S.W.2d 960, 963.

The above case of Rancho Oil Company v. Powell indicates the burden one assumes asserting the abandonment of a homestead.

The opinion quotes from another opinion of the Suprme Court as follows: "This Court recently stated * * * 'beginning

as early as 1857 in an opinion by Chief Justice Hemphill in Gouhenant v. Cockrell, 20 Tex. 96, our courts have held that "it must be undeniably clear and beyond almost a shadow, at least (of) all reasonable ground of dispute, that there has been a total abandonment with an intention not to return and claim the exemption." ' "

No good reason appears to us why this should not apply to an urban homestead consisting of both residence and place of business, or consisting alone of a residence, or place of business alone.

Under the findings of fact, which we think were justified by the evidence, the trial court was correct in denying specific performance to appellants.

The judgment is in all things affirmed.