In re Michael Lane NELSON, Debtor.

**FIRST NATIONAL BANK MANSFIELD, Plaintiff,**

v.

**Michael Lane NELSON, Defendant.**

**Bankruptcy No. 390–34532 RCM–11. Adv. No. 390–3771.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

July 15, 1991.

Supplemental Memorandum Opinion Dec. 4, 1991.

MEMORANDUM OPINION ·

ROBERT C. McGUIRE, Chief Judge.

Following are the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, with respect to the trial of the above adversary proceeding on May 14–16, 1991.

### Claims and Defenses

The claims and defenses of the parties are as follows.

The debtor in the above-styled adversary proceeding, Michael Lane Nelson ("Defendant"), alleges that First National Bank Mansfield ("Plaintiff") does not have a valid and enforceable deed of trust lien on the real property located at 8224 Grapevine Highway, North Richland Hills, Texas, for the reason that, at the time Plaintiff allegedly acquired its lien, such property was the business homestead of Defendant.

Defendant is seeking to have a trustee's foreclosure sale of the property, held on October 6, 1987, set aside on the grounds that Plaintiff did not have a valid, enforceable deed of trust lien on the property, or alternatively, that Plaintiff did not comply with the Texas Property Code in conducting the trustee's sale.

Defendant also asserts that the $669,000 loan (the "Note") was usurious since (a) the Note provides for a floating rate of interest, but does not provide a maximum interest rate ceiling, and (b) the interest rate which was actually charged and received by Plaintiff exceeded six percent per annum, which was the highest rate which it could have lawfully charged.

Defendant further seeks relief from Plaintiff's purported Trustee's sale of two tracts of property located in Mansfield, Tarrant County, Texas, on the basis that Plaintiff failed to comply with the Texas Property Code in conducting such foreclosure sale.

Plaintiff is seeking a determination that it had a valid and enforceable lien at all times on the subject property, and that its trustee's sale of said property was valid in all respects. Plaintiff is further requesting that the Court fix the amount of its deficiency claim now existing under the Note.

Plaintiff additionally requests that, should the Court find the North Richland Hills property to be Defendant's homestead, the Court find that Defendant defrauded Plaintiff through his fraudulent misrepresentations and that the Court grant Plaintiff judgment against Defendant for the amounts due and owing under the Note, for fraud, and that such judgment be non-dischargeable under 11 U.S.C. § 523.

*Background Facts*

Defendant has been a chiropractic doctor at all pertinent times herein. The first issue in this case is whether Defendant's clinic (the "Clinic"), owned by him, at 8224 Grapevine Highway, North Richland Hills, Texas, was his business homestead at the time of his allegedly giving Plaintiff liens thereon. The Clinic was built by Defendant in 1976 and he has been using the Clinic as his place of practicing his business as a chiropractic doctor since such date. When Defendant built the Clinic, he lived in a house in North Richland Hills, Tarrant County, Texas with his then wife. He lived with her in such house from approximately 1974–1976. They were divorced in 1976. For approximately three years after the divorce, he lived at 1212 Irwin, Hurst, Tarrant County, Texas. While he still owns such property at 1212 Irwin, he has not lived there since approximately 1979. Since 1979, that property has been continuously rented out to tenants.

In approximately December 1979 or January 1980, Defendant moved to a three-bedroom mobile home in Wise County, Texas. He left some chairs and bar stools in the attic at 1212 Irwin and moved a couple of items to the Clinic, but the majority of his furniture he moved to Wise County at such time. He commuted to work each day and was living in the Wise County mobile home when the $644,000 interim development loan and $669,000 final loan documents in question were executed. The total of all these loans was in the principal amount of $669,000. It is thirty-five miles from the Clinic to the Wise County property.

The Wise County mobile home is located on approximately thirteen acres of land. Defendant's elderly grandfather lived with him in the mobile home in Wise County, Texas from the inception in December 1979 or January 1980, until his grandfather died in May 1984. Defendant moved to Wise County primarily for two purposes. First, his grandfather's wife had died, his grandfather, although having a house in Tarrant County, Texas, was at loose ends and wanted to live in open spaces, and Defendant's parents traveled frequently, making it difficult for them to keep an eye on his grandfather. Second, Defendant had some horses that he had boarded elsewhere and he wanted a place to keep his horses. Prior to moving to Wise County, Texas, Defendant had lived all his life in Tarrant County, Texas, except when he had been away at college prior to 1974.

The Wise County property is rural acreage. Defendant used the ranch or farm in Wise County, Texas as a tax business write-off. Defendant's financial statement to Plaintiff listed the Wise County property as his residence.

The 1212 Irwin property is a 3-2-2 brick house, with a small backyard.

Defendant presently has five horses at the Wise County property, and in late 1984 he had five or six horses there. He does not ride the horses, but tries to use some of them for racing. On his tax returns, Defendant took business tax deductions on the 1212 Irwin property, categorizing it as rental property.

Defendant put in a well, a covered patio on the mobile home, and built a barn, a chicken coop and fences on the Wise County property. According to Defendant's testimony, the Wise County property never generated income.

None of the properties, *i.e.,* the 1212 Irwin, the Clinic, or the Wise County were ever designated as homestead with the taxing authorities by Defendant.

Defendant testified that he has not moved back into the 1212 Irwin property because he needs the rent money to live on.

Defendant testified that he always intended to move back to Tarrant County from Wise County. He is claiming 1212 Irwin as his residential homestead and the Clinic as his business homestead.

Since 1976, Defendant has continuously received all his mail at the Clinic address and his voter registration was out of such address since such date.

Defendant lived in the mobile home in Wise County continuously from 1979 until August 1989, when he moved back to Tarrant County, Texas into a rent house he

owned on Victoria Street. He lived there for three or four months and then, from that point forward through trial date, he has lived with his parents on Lola Drive in North Richland Hills, Tarrant County, Texas. Defendant testified that when he bought the 1212 Irwin property, he intended to move back there and live there, and that the reason he had not lived there since 1979 was because the property was easy to rent and he needed to keep it rented because of his constant financial difficulties. In November 1984, prior to the bank loans in question, he gave Bedford Bank a deed of trust mortgage on the 1212 Irwin property.

In or around November 1984, Defendant approached Plaintiff and requested a loan to remodel and renovate a strip shopping center located in Mansfield, Texas (the "Mansfield Center").

On or about December 13, 1984, Defendant executed a promissory note to Plaintiff in the original principal amount of $644,000 (the "Development Note"). The Development Note matured in six months.

On or about December 13, 1984, Defendant executed a deed of trust, for the benefit of Plaintiff, covering the Mansfield Center. This Deed of Trust is recorded at Volume 8037, Page 2034, Real Property Records of Tarrant County, Texas.

On January 14, 1985, Defendant executed the Non–Homestead Affidavit and Designation of Homestead (the "Affidavit") (Plaintiff's Exhibit ("PX") 4). The Affidavit renounces and disclaims any homestead right in Exhibit A, which exhibit legally describes the Clinic. In the Affidavit, he represents as follows:

Neither of them [although only he signed it since he never remarried after his divorce] now resides upon, uses in any manner, nor claims as either a business or residence homestead, nor has any present intention of ever in the future residing upon, using or claiming as either a business or residence homestead, the following described property. Each of them hereby renounces and disclaims any homestead right, interest or exemption in such property, to wit:

SEE ATTACHED EXHIBIT "A"

That they [although only he signed it since he never remarried after his divorce] now reside upon, use and claim as their legal homestead the following described property, to wit:

SEE ATTACHED EXHIBIT "B" [Exhibit B refers to the Wise County property].

\*   \*   \*   \*   \*   \*

That this affidavit and designation is made to induce _____ to make a mortgage loan secured by a Deed of Trust upon the property first described above.

The two deeds of trust executed by Defendant for the benefit of Plaintiff also contained provisions that Defendant did not claim the property as any part of his homestead.

On January 14, 1985, Defendant executed a deed of trust, which states that it grants Plaintiff a lien against the Clinic. This Deed of Trust is dated January 3, 1985, and is recorded at Volume 8065, Page 557, Real Property Records of Tarrant County, Texas.

In or around February, 1985, construction was completed on the renovation of the Mansfield Center.

On or about July 10, 1985, Defendant executed the Note to Plaintiff in the original principal amount of $669,000.

On or about July 10, 1985, Defendant executed a deed of trust which states that it grants Plaintiff liens against the Mansfield Center and the Clinic. This Deed of Trust is recorded at Volume 8260, Page 1359 of the Real Property Records of Tarrant County, Texas.

Defendant failed to make the monthly payments due under the Note in late 1986 or early 1987.

On or about June 5, 1987, Raymond Meeks ("Meeks"), the attorney for Plaintiff, notified Defendant in writing that, unless all past due payments were made on the Note, the maturity of the Note would be accelerated and the Mansfield Center

and the Clinic would be posted for foreclosure. (Exhibit)

On or about September 15, 1987, Meeks, as Substitute Trustee under the July 10, 1985 Deed of Trust, posted a Notice of Substitute Trustee's Sale at the Tarrant County Courthouse, and recorded a copy with the Tarrant County Clerk. Additionally, Meeks served a copy of the Notice of Substitute Trustee's Sale on Defendant. The Notice of Substitute Trustee's Sale included both the Mansfield Center and the Clinic.

On October 6, 1987, Meeks, acting as Substitute Trustee, held a foreclosure sale and sold the Mansfield Center to Plaintiff for the sum of $362,200.

On or about October 6, 1987, Meeks, acting as Substitute Trustee, held a foreclosure sale and sold the Clinic to Plaintiff for the sum of $215,000.

On or about October 9, 1987, a Substitute Trustee's Deed with respect to the October 6, 1987 foreclosure of the Mansfield Center was recorded at Volume 9091, Page 1247 of the Real Property Records of Tarrant County, Texas.

On or about October 9, 1987, a Substitute Trustee's Deed with respect to the October 6, 1987 foreclosure sale of the Clinic was recorded at Volume 9091, Page 1243 of the Real Property Records of Tarrant County, Texas.

Defendant filed suit against the Plaintiff on November 3, 1987, in Cause No. 153–10876–87, in the 153rd Judicial District Court of Tarrant County, Texas, alleging that the Clinic was Defendant's business homestead and that Plaintiff's Deed of Trust lien was invalid.

At all times during the loan negotiations with Plaintiff, Defendant was physically occupying and residing on acreage in rural Wise County.

On November 15, 1984, at approximately the same time as his loan transactions with Plaintiff, Defendant gave the Bedford Bank a non-purchase money deed of trust lien on the real property located at 1212 Irwin. Defendant, in that Deed of Trust, disclaimed any homestead interest in the property located at 1212 Irwin.

Defendant's action in moving from the property located at 1212 Irwin in 1979, to the rural acreage in Wise County, has never been accompanied by an act evidencing an intention to return to the house at 1212 Irwin.

Plaintiff was aware at all material times that Defendant's chiropractic business, which was his primary business, was run out of the Clinic from 1976 forward.

Plaintiff's loan committee meeting minutes (PX 16) are dated December 7, 1984. There is an undated addendum to the minutes reading as follows:

*ADDENDUM*

Dr. Nelson has consented to give a second—lien on his Fort Worth clinic on Grapevine Highway. The fair market value of this property is estimated to be in excess of $450,000. Allied Northeast Bank—Fort Worth, holds the first lien with an outstanding balance of approximately $85,000.

It is agreed that the second lien would be released at that time when the net income from the Mansfield property will provide adequate cash flow to service this debt. Said net income shall be derived from leased space at market rates. Rick Sorensen of McDonald, Sanders, et al is researching the 'business homestead' laws to insure a valid and enforceable second lien.

If the homestead laws prohibit a valid and enforceable second lien, I request that Chairman Tapp and President Huckabee be authorized to accept other assets which would provide the 'comfort' necessary to fund this credit.

Mr. Holman, a witness for Plaintiff, credibly testified that, if Mr. Sorensen had told them that the second lien could not be taken, then Plaintiff would have kept as collateral the $100,000 C.D. of Defendant, which it was holding. Standing alone, this testimony is not that significant because there was insufficient showing that Defendant, at such time, had knowledge that, if he had a rural homestead in Wise County,

he could not claim a business homestead in the Clinic in Tarrant County, Texas.

The Mansfield Center never cash-flowed sufficiently to make release of any collateral a *bona fide* issue between the parties.

On the fifth page of the minutes, it is stated under a category entitled "Personal Data" on Defendant, as borrower:

> Dr. Michael Nelson, a Fort Worth chiropractor, *will soon be residing in Mansfield,* although he will continue to practice in Northeast Fort Worth. However, he is 'establishing' an associate in the subject property and will lease approximately 25% of the subject property. A resume for Dr. Nelson is attached as 'Exhibit D'.

(Emphasis added). Mansfield is in Tarrant County. Mr. Holman, for Plaintiff, testified that Defendant told him that he was looking to buy a ranch in Mansfield, Texas.

By letter of December 17, 1984 (PX 19), Plaintiff's attorney wrote the Plaintiff referencing the homestead issue, and stated in part:

> As a follow-up to our telephone conversation of December 7, 1984, I will set out the basic facts brought out in our discussion concerning the business homestead question which you posed. The facts, as I understand them, are that a proposed borrower currently maintains a rural homestead in Wise County, Texas, consisting of approximately 70 acres. He, as a physician, currently, in an individual capacity, maintains and owns a medical facility used by him for his medical practice in a city or urban area. A third party lender currently has a purchase money or construction lien against these business premises as described. First National Bank Mansfield is considering taking a second lien position against these business premises.
>
> The general rule applicable in this situation is that one owning and occupying a rural homestead in fact, cannot at the same time claim an urban business homestead. *Davis v. Hawn Lumber Company,* 193 S.W.2d 263 [Tex.Civ.App.—Dallas 1946]. Consequently, First National Bank Mansfield should obtain a designation by the proposed borrower and his spouse, if applicable, which verifies, under oath, that the Wise County property is, in fact, the borrower's rural homestead.

> \* \* \* \* \* \*

> Per your request, I have enclosed a copy of Chapter 41 entitled 'Homestead', of the recently passed Texas Property Code. This Code became effective January 1, 1984. Chapter 41 states the general parameters of the law. However, I stress that literally hundreds of cases have been written which have interpreted the prior homestead law, and I fully expect that hundreds of cases will be written interpreting the statutes which I have enclosed. Additionally, certain constitutional issues are involved. Consequently, I would suggest that except in the clearest of fact circumstances, that you contact our office concerning any questions on the interpretation of this statute.

### Availability of a Business Homestead

■ An individual in Texas cannot claim both a rural and an urban homestead. *Farrington v. First National Bank of Bellville,* 753 S.W.2d 248, 251 (Tex.Civ. App.—Houston, 1st Dist., 1988, writ denied). The reasoning behind allowing an urban business homestead rather than a rural business homestead is discussed in *Thomas v. Creager,* 107 S.W.2d 705 (Tex. Civ.App.—Eastland 1937, writ dism'd w.o.j.). It is also clear that an individual can have only one residence homestead at any given time and only if that residence homestead is urban may a person also claim an urban business homestead. *Johnston v. Martin,* 81 Tex. 18, 16 S.W. 550 (1891); *Davis v. Hawn Lumber Co.,* 193 S.W.2d 263, 265 (Tex.Civ.App.—Dallas 1946, no writ); 43 Tex.Jur.3d, Homesteads § 36. Consequently, Defendant could not have both a rural residence homestead and an urban business homestead at the same time.

■ Living on a piece of property does not necessarily mean the owner is claiming

it as his homestead. *Rancho Oil Co. v. Powell*, 142 Tex. 63, 175 S.W.2d 960, 963 (1943). A claim for homestead must be supported by two elements. The owner must use the property and he must intend to claim it as homestead. *Sims v. Beeson*, 545 S.W.2d 262, 263 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.).

■ The Affidavit is some evidence of Defendant's intent, but it is not conclusive. *Connelly v. Johnson*, 259 S.W. 634 (Tex. Civ.App.—San Antonio 1924, no writ).

■ A person can have a business homestead without a residence homestead. *Lewis v. Morrison Supply Co.*, 231 F.2d 632, 634 (5th Cir.1956); *City of El Paso v. Long*, 209 S.W.2d 950, 954 (Tex.Civ.App.— El Paso 1947, writ ref'd n.r.e.); unpublished State Court opinion reversing Plaintiff's summary judgment granted by the trial court (Debtor's Exhibit ("DX") 43); Tex. Const. art. XVI, § 51; Tex.Prop.Code Ann. § 41.002 (Vernon Supp.1991); 43 Tex. Jur.3d, Homesteads § 36 (relation between business and residential homestead). The homestead exemption is based on the public policy of protecting citizens from dangers of destitution. 43 Tex.Jur.3d, Homesteads § 2. The public policy is no less important for the business homestead. *Thomas v. Creager, supra* at 709.

■ A void transfer does not constitute an abandonment of homestead rights, nor do absences from property, standing alone, establish abandonment as a matter of law, provided that the homestead claimant acquired no other homestead and no showing is made that he never intended to return and use the property as a homestead. *Matter of Moody*, 862 F.2d 1194, 1199 (5th Cir.1989), citing *Hughes v. Parmer*, 164 S.W.2d 576, 577–578 (Tex.Civ.App.1942, no writ).

1. Temporary rental of a homestead does not constitute an abandonment. Texas Constitution, art. XVI § 51. However, evidence that shows the premises were rented so as to provide the homestead claimant with money so as to enable the claimant to live elsewhere can sustain a finding that the rental was not merely temporary. 43 Tex.Jur.3d, Homesteads § 125.

2. Texas Constitution art. XVI § 50.

*Conclusions on Homestead Status of the Clinic Property at the Time of the Loan by Plaintiff to Defendant in 1984 and 1985*

■ At the time of the loan by Plaintiff to Defendant in 1984 and 1985, the Clinic was Defendant's business homestead. His moving to Wise County was on a temporary basis and he intended to move back to Tarrant County, Texas. The Affidavit is just evidence of intent and is not conclusive as to his intent at such time. Even if he had abandoned the 1212 Irwin property as residential homestead,[1] he had not established Wise County, Texas, as residential homestead at such time; he could, therefore, claim the Clinic as business homestead, even without a residential homestead. On November 15, 1984, he had given the Bedford Bank a second lien on the 1212 Irwin property (PXs 25 and 26) to secure such bank's non-purchase money note for $205,000.

■ Plaintiff's deed of trust liens on the clinic were void and of no force and effect,[2] if Defendant is not otherwise estopped to assert their invalidity.

It appears that, at some time subsequent to Plaintiff's loan, Defendant may have adopted the Wise County property as his residential homestead,[3] which would then appear to legally constitute an abandonment, at such time, of his business homestead, under the above-cited authorities. However, even assuming a cessation of the business homestead after the mortgage to Plaintiff, under such a scenario, it would not resuscitate a void contractual lien. *Lewis v. Brown*, 321 S.W.2d 313 (Tex.Civ. App.—Ft. Worth, 1959, writ ref'd n.r.e.); 43 Tex.Jur.3d, Homesteads § 74 (Contrac-

3. If a homestead claimant has remained away from the home a prolonged period of time, an intention of no interest to return may be inferred. 43 Tex.Jur.3d, Homesteads § 120. While occupying a piece of property as a homestead, a person cannot establish a homestead right in another place by "attempting to live there in the future". *Caulley v. Caulley*, 806 S.W.2d 795 (Tex.1991).

tual Liens) and § 117 (Effect of Termination).

### Estoppel

■ Did Defendant, by his conduct, estop himself to claim homestead?

Plaintiff's representative testified, in this case, that he could never remember another case where Plaintiff had requested an outside attorney's opinion on homestead before approving property as collateral on a loan.

Plaintiff actually advanced the initial construction money on the Mansfield Center before obtaining the Affidavit, when it had in hand Defendant's $100,000 C.D. (referred to in Plaintiff's minutes (PX16)), with a collateral assignment executed in blank (PX 13). In April 1985, Plaintiff still had possession of Defendant's $100,000 C.D. as collateral (PXs 13 & 14), and, on June 17, 1985, released it back to his designee, Overton Park National Bank, Fort Worth (PX 15), a bank related to Plaintiff. Plaintiff had the initial $100,000 C.D. in its possession for approximately six months, but there was a different C.D. (presumably a renewal from Gill Savings Association, the C.D. maker) that went to Overton Park National Bank in June 1985 (PXs 14 & 15). This release back of the C.D. was after Plaintiff obtained the January 14, 1985 Affidavit and Deed of Trust covering the Clinic dated January 3, 1985 and notarized January 14, 1985 (PX 5). This Deed of Trust incorrectly refers to it being given as collateral for a $100,000 note, but it also secures all present and future debt, which would have included the $644,000 note.

While Plaintiff had notice, as reflected in its own minutes (*See* p. 10 above), that Defendant intended to buy a ranch in Mansfield, an intention to buy a ranch in the future would not invalidate an existing represented residential homestead on the Wise County, Texas property. *Caulley v. Caulley,* 806 S.W.2d 795 (Tex.1991).

■ Normally, the estoppel doctrine does not come into effect when, as here, a party is in possession of the property. 43 Tex.Jur.3d, Homesteads § 134; *In re Ni-*

*land,* 825 F.2d 801 (5th Cir.1987); *Patterson v. FDIC,* 918 F.2d 540 (5th Cir.1990).

Defendant testified that, at the time of the loan, he told Plaintiff he would give a second lien on the Clinic if he could. He further testified that, if anyone asked him at such time where he lived and resided, he would have told them Wise County, Texas. Mr. Holman, for Plaintiff, credibly testified that Defendant told him, at such time, that he lived in Wise County, Texas. Even though the Affidavit quoted above has a blank space in referencing who the representation was made to, it was made to Plaintiff as part of the closing papers furnished to the title company by Defendant on January 14, 1985.

While Defendant was in possession of the Clinic, if his Affidavit as to residential homestead in Wise County was believed by Plaintiff, he was not entitled to claim the Clinic as his business homestead, and the lien would be valid. In his financial statements to Plaintiff, he listed the Wise County property as "residence" and listed 1212 Irwin and other Fort Worth properties as rental properties, with monthly rental of $525 apiece.

Defendant is estopped to assert the invalidity of the lien by the representations made in the Affidavit to Plaintiff, which were relied upon by Plaintiff in releasing, in June 1985, the $100,000 C.D. and retaining the January 1985 deed of trust lien (PX 5) on the Clinic as security for the loan. This lien was renewed and extended in July 1985 (PX 7). This fact situation is closest to the line of Texas cases holding that, where the homestead claimants are in occupancy of two parcels and the circumstances are such that either of the two parcels could properly be considered homestead, if the homestead claimant declares one of the parcels to be his homestead, and relying thereon, an encumbrancer takes a lien on the other parcel, the homestead claimant is estopped to deny the assertion. *Schwarzer v. Calcasieu Lumber Co.,* 176 S.W.2d 597 (Tex.Civ.App.—Austin, 1943, no writ); 43 Tex.Jur.3d, Homesteads § 137 at p. 627; *Haile v. Federal Land Bank at Houston,* 135 S.W.2d 1024 (Tex.Civ.App.—Eastland,

1940, writ ref'd); *Greer v. Franklin Life Ins. Co.,* 109 S.W.2d 305 (Tex.Civ.App.—Dallas, 1937, writ dism'd by agr.); *Wootton v. Jones,* 286 S.W. 680 (Tex.Civ.App.—Austin 1926, writ dism'd w.o.j.).

### *Alleged Wrongful Foreclosure*

■ 1. *Alleged Failure to Give Twenty-One Days Notice.* The Trustee posted notice of the October 6, 1987 Trustee's Sale on September 15, 1987 at approximately 4:00 p.m. It was filed in the County Clerk's Office at 3:59 p.m. (PX 10). On that date, he mailed the notice to Defendant by certified mail.

Texas Property Code § 51.002, *et seq.* and the express terms of the July 10, 1985 Deed of Trust (PX 7), require the Trustee to post the Notice of Trustee's Sale *at least* twenty-one days before the date of the Trustee's Sale, give Defendant written notice, by certified mail, at least twenty-one days before such sale, and file in the clerk's office at least twenty-one days before the date of the sale. If Plaintiff failed to comply with the provisions of the Texas Property Code, or the express provisions of the Deed of Trust, such Trustee's Sale is void and may be set aside. *Slaughter v. Qualls,* 139 Tex. 340, 162 S.W.2d 671, 674 (1942); *Shearer v. Allied Live Oak Bank,* 758 S.W.2d 940 (Tex.App.—Corpus Christi 1988, writ denied). Under § 51.002, service of notice is complete *when deposited* in the mail, postage prepaid and properly addressed to debtor's last known address. Defendant received this notice.

Defendant contends that this September 15, 1987 mailing did not give the full twenty-one day notice as required by Texas Property Code § 51.002 *et seq.* Some courts have held that posting the notice on the 21st day before sale is sufficient to comply with the provisions of the Texas Property Code. *Newman v. Woodhaven National Bank, Inc.,* 762 S.W.2d 374 (Tex. Civ.App.—Ft. Worth 1988, no writ); *Hutson v. Sadler,* 501 S.W.2d 728, 730–731 (Tex.Civ.App.—Tyler 1973); *Hausmann v. Texas Savings & Loan Assn.,* 585 S.W.2d 796, 800–801 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.); *Bryant v. Texas American Bank Levelland,* 795 S.W.2d 915 (Tex.

Civ.App.—Amarillo 1990, writ granted). However, Defendant contends the foregoing holdings are erroneous. The Texas Supreme Court has granted a writ of error on this issue. *See, Bryant v. Texas American Bank Levelland, supra, writ granted,* 34 Tex.S.Ct.J. 366 (Feb. 27, 1991).

The issue turns on the meaning of the word "day" as used in the Property Code. *Long v. City of Wichita Falls,* 142 Tex. 202, 176 S.W.2d 936, 939 (1944) held that:

> In order to determine what construction should be placed on the term 'day,' as used by the Legislature in the statute here under construction, we must look to the purpose intended to be accomplished by the Act and the effect that it will have when so applied to the subject matter.

The Property Code is intended to give a "minimum level of protection for the debtor". *Hausmann v. Texas Savings & Loan Assn., supra* at 799. Accordingly, a court should construe the Property Code in a way that gives the most protection to the debtor.

There was no specific testimony as to when the sale actually occurred on October 6, 1987, nor as to when, on September 15, 1987, the Notice of Sale was mailed to Defendant. The Trustee's affidavit attached to his Trustee's Deeds (PXs 11 and 12) recited the conclusion that proper twenty-one days notice was given under § 51.-002. However, the Court deduces that the sale took place prior to 3:59 p.m. on October 6, 1987 and that the notice letter was mailed sometime after 3:59 p.m. on September 15, 1987. It appears that the posting attorney would have had an interest in getting to the clerk's office as the first step on September 15, 1987, since it would be most important to first have the Notice stamped in on September 15, 1987 to attempt to comply with § 51.002. As used in Texas statutes, the word "day" means a full twenty-four hour period. *Kelly v. State,* 139 Tex.Crim. 156, 138 S.W.2d 1075 (App.1940); *Long v. City of Wichita Falls, supra,* 176 S.W.2d at 938 syl. 1.

Texas courts have construed the term "day" to mean a twenty-four hour period, and because the Property Code is designed

848

to provide a minimum level of protection for the debtor, it follows that Plaintiff was required to post its Notice of Trustee's Sale, file it in the County Clerk's office, and mail the requisite Notice to Defendant, on or before September 15, 1987, before the time of the day on September 15, 1987 that it actually conducted the sale on October 6, 1987. Plaintiff failed to give this requisite twenty-one days notice and, therefore, this voids the foreclosure sales of the Clinic and the Mansfield Center properties. *Shearer v. Allied Bank, supra.*

██ 2. *Alleged Failure to Give Notice of Acceleration.* Before Plaintiff foreclosed, it was required to give Defendant notice that it accelerated the maturity of the $669,000 loan. *Ogden v. Gibralter Savings Assn.,* 640 S.W.2d 232 (Tex.1982); *Shumway v. Horizon Credit Corp.,* 801 S.W.2d 890 (Tex.1991). Plaintiff's acceleration letter (PX 8) is attached hereto.

Although some payment was made thereafter, and before foreclosure, Defendant did not pay the full arrearage of $30,415.32. The property had been previously posted on June 15, 1987 for a July sale (PX 37) and on July 10, 1987 for an August sale (PX 38). PX 8 is very similar to the letter in *Ogden v. Gibralter Savings Assn., supra,* but the Ogden letter stated that "your failure to cure such default *may* result in acceleration of sums secured ..." (emphasis added), whereas PX 8 states "If all the sums demanded have not been received on or before June 12, 1978 [sic] [the funds were not received by June 12, 1987 or before foreclosure], First National Bank Mansfield *will,* without further notice to you, in accordance with the terms of the note, declare the entire balance of the note to be due and payable." (Emphasis added). In the *Ogden* Supreme Court opinion, 640 S.W.2d at 234, the court stated:

> We do not decide whether, after proper notice of intent to accelerate, a notice of trustee's sale is sufficient to give notice that the debt has been accelerated.

The *Ogden* Court of Appeals decision had so held, 620 S.W.2d 926, 928 (Tex.Civ.App. 1981).

The Court finds that PX 8, together with the two prior notices of foreclosure was sufficient notice of acceleration.

Additionally, from June 1987 until the date of foreclosure on October 6, 1987, Defendant had extensive negotiations with Plaintiff's representatives. Oral notice or knowledge of Plaintiff's acceleration of the Note was given directly to Defendant at these meetings with Plaintiff's representatives, such that Defendant had actual knowledge that the Note had been accelerated prior to the October 6, 1987 Substitute Trustee's sale.

### Reformation

██ Defendant's argument that he never intended to grant a lien on the Clinic and that the Deed of Trust "mistakenly" included the Clinic, and therefore should be reformed, is without merit.

Prior to executing the July 10, 1985 Deed of Trust, Defendant had already given Plaintiff a lien on the Clinic pursuant to the Deed of Trust dated January 14, 1985. The July 10, 1985 Deed of Trust was given in renewal and extension of the obligation dated January 14, 1985, and therefore, logically would have included a description of the same property. Additionally, the description of the Clinic in the July 10, 1985 Deed of Trust is clear and unambiguous.

Defendant did not raise his reformation argument until January 1991, three and one-half years after he initiated his lawsuit against Plaintiff on his homestead claim, and five and one-half years after he executed the Deed of Trust allegedly in need of reform.

The evidence clearly shows that both Plaintiff and Defendant intended that the July 10, 1985 Deed of Trust grant Plaintiff a lien on the Clinic.

██ Defendant's request for relief in the form of reformation of the July 10, 1985 Deed of Trust so as to delete any reference to the Clinic should be and is, in all things, denied. Defendant has failed to establish that the Clinic was "mistakenly" included in the Deed of Trust by sufficient evidence. *Oldaker v. Travelers Ins. Co.,*

497 S.W.2d 402, 404 (Tex.Civ.App.—El Paso 1972, no writ). Evidence of a mistake must be clear, exact and satisfactory in order to justify the reformation of a deed. *Alkas v. United Sav. Assn. of Texas, Inc.,* 672 S.W.2d 852, 858 (Tex.Civ.App.—Corpus Christi 1984, writ ref'd n.r.e.). Whether a given state of facts is clear, satisfactory and convincing so as to warrant reformation of an instrument is a matter of law for the court to decide. *Reliance Ins. Co. v. Pruitt,* 94 S.W.2d 833, 836 (Tex.Civ.App.—Texarkana 1936, writ dism'd); *Bifano v. Econo Builders, Inc.,* 401 S.W.2d 670, 675 (Tex.Civ.App.—Dallas 1966, writ ref'd n.r.e.). Defendant has failed, as a matter of law, to meet his burden of proof on this issue.

### Usury

■ Defendant's argument that the $669,000 Note is usurious is also without merit. The Note, on its face, does not show an intention by Plaintiff to charge interest at a higher rate than permitted by law.

Defendant has failed to show that, other than the Note, there was some other agreement, device of subterfuge to charge usury, and that both Plaintiff and Defendant had that purpose in mind at the time the Note was executed.

The payments that Defendant made to Plaintiff on the Note did include interest calculated upon the rate established and used by Plaintiff as its "prime" rate, thereby establishing a course of conduct on the part of Defendant to pay interest calculated on Plaintiff's established prime rate.

The rate of interest on the $669,000 Note was prime plus one and one-half percent per annum. The term "prime" was intended by the parties to mean the prime rate established and used by Plaintiff.

Plaintiff never charged Defendant interest at a rate higher than allowed by law.

Plaintiff never knowingly charged Defendant a usurious rate of interest.

The $669,000 Note was a renewal of the earlier $644,000 Development Note; consequently, the terms of the $669,000 Note included the usury savings provision found in the $644,000 Development Note.

The $669,000 Note is not usurious.

Defendant's cause of action for usury is denied. Plaintiff is a national bank, the provisions of 12 U.S.C. §§ 85 and 86 are controlling and preempt state law and any common law claim Defendant alleges.

The Note, on its face, does not show any intention by Plaintiff to charge interest at a higher rate than allowed by law. *Republic Nat. Bank–Dallas, N.A. v. Shook,* 627 S.W.2d 741, 748 (Tex.App.—Tyler 1982, rev'd on other grounds, 653 S.W.2d 278 (Tex.1983)).

### Amount Due

PXs 11 and 12 properly showed the principal amount of the secured debt due on October 6, 1991. PX 84 properly showed the amount due if the foreclosure had been valid.

The parties reserved proof on claimed attorney fees until the foregoing Findings and Conclusions were made.

**850**

## RAYMOND M. MEEKS
ATTORNEY AT LAW
1000 N. WALNUT CREEK DR., SUITE C
MANSFIELD, TEXAS 76063-1506

817 473-1119

June 5, 1987

Michael L. Nelson
8224 Grapevine Hwy.
Fort Worth, TX 76118

Re: Note dated July 10, 1985, executed by Michael L. Nelson, and payable to the order of First National Bank Mansfield, in the original principal amount of $669,000.00, and secured by a Deed of Trust recorded in Volume 8260, Page 1359, Deed Records, Tarrant County, Texas.

Dear Dr. Nelson:

You are in default in making your payments under the above referenced note. As of May 10, 1987, you were four payments in arrears, for a total arrearage of $30,415.32. Demand is hereby made that you pay the sum of $30,415.32 3to First National Bank Mansfield through this office on or before June 12, 1987. Additionally, demand is hereby made that you pay the sum of $250.00 as attorney's fees, as provided in the note. Further, demand is made that you make the June 10, 1987 payment on or before June 12, 1987.

If all the sums demanded have not been received on or before June 12, 1978, First National Bank Mansfield will, without further notice to you, in accordance with the terms of the note, declare the entire balance of the note to be due and payable. In such event, you will be able to redeem your property only by payment in full of the entire principal balance of the note, together with any accrued interest and attorney's fees as provided in the note. Also, in such event, the Trustee will be requested to begin foreclosure proceedings pursuant to the terms of the deed of trust. We hope that this will not be necessary.

Very truly yours,

Raymond M. Meeks

RMM/dm
cc: Lu Ann Pennington

## SUPPLEMENTAL MEMORANDUM OPINION

This opinion of October 21, 1991, supplements the original Memorandum Opinion entered July 16, 1991. In that opinion, certain issues were reserved for further development and certain issues arose as a result of that opinion and the status conference held on September 4, 1991.

### Value of the Mansfield Property

The value of the Mansfield Property on the date of foreclosure was $67,500.

### Plaintiff's Attorney Fees

The total attorney fees sought by Plaintiff are $62,643.92, plus reasonable and necessary expenses incurred of $5,703.64, for a total of $68,347.56. The attorney's fees and expenses as prayed for are allowed, less a deduction of $1,300, having to do with time spent on objections to criminal defense representation and Debtor's main case attorney fees. Thus, the total attorney fees and expenses allowed are $67,047.56. While these fees might appear large, collection of the note involved activity in the Bankruptcy Court, Justice of the Peace Court, and the State Trial and Appellate Courts, and numerous court appearances. Further, it is difficult to imagine a case where more legal issues have been generated on an otherwise relatively straight forward fact scenario. The rates charged were stated by Plaintiff's counsel to be discounted rates charged to this particular client. The rates charged were below those observed by this Court for like services. The average overall billing rate was $97.70 per hour. Most of the time was spent by attorneys. The facts and statements contained in the attorney's affidavit are found to be substantially true and correct.

### Defendant's Attorney Fees

Defendant claims attorney fees as an offset on the debt because of success with respect to the notice of foreclosure issue. The Court partially agrees and finds that Defendant is entitled to an offset for $6,000, representing forty hours attorney time reasonably devoted to such issue at a rate of $150 per hour, which is found to be a reasonable rate.

Defendant also claims as an offset attorney fees for time spent on the business homestead issue. Defendant was not ultimately successful on this issue because of the estoppel finding, and, therefore, Defendant is not entitled to an additional offset for attorney fees.

### The Claim Amount

Plaintiff is entitled to recover principal and interest through May 14, 1991 of $935,351.54, plus attorney fees and expenses of $67,047.56, for a total of $1,002,399.10, less $73,500 for Defendant's attorney fees, plus credit for sale of the Mansfield Property, resulting in a balance of $928,899.10, which is the total debt with all credits as of May 14, 1991.

### Dischargeability of Nelson's Debt Under § 523

Plaintiff asserts that the debt should be non-dischargeable under § 523(a)(2)(A) and (B), and (a)(6). Contrary to Debtor's contentions and to the possible implication of the original opinion, Plaintiff did pray sufficiently for additional relief under § 523, even if it was otherwise successful in obtaining a favorable lien finding.

### § 523(a)(2)(B)

Plaintiff asserts that § 523(a)(2)(B), the section involving "use of a statement in writing", is applicable because the financial statement (PX 1) showed the Wise County Property as Defendant's residence. This was not false; therefore, that prong of the section is not met. Plaintiff also contends that the affidavit referred to on page 6 of the opinion (PX 4) constitutes the "use of a statement in writing" within the meaning of § 523(a)(2)(B). It appears that

such an affidavit is not the type of a statement as is meant by § 523(a)(2)(B). *See, for example, In re Phillips*, 804 F.2d 930, 932 n. 1 (6th Cir.1986), where the court held that § 523(a)(2)(B) applies only to false written statement regarding the debtor's financial condition and would not apply to a deed. That court, at p. 932, also quotes the legislative history to the effect that such section "pertains to the so-called false financial statement".

## § 523(a)(2)(A)

■ Section 523(a)(2)(A) is a closer question. Plaintiff relies on the affidavit (PX 4). Defendant raises various contentions, including the following: "Since this court has determined that the bank is entitled to enforce its lien, then clearly any statements made by Dr. Nelson did not result in loss of property to the Bank." The general elements of fraud under § 523(a)(2)(A) include (1) that the debtor made a material representation; (2) that is was false; (3) that he knew it to be false or he made it recklessly without any knowledge of its truth and as a positive assertion; (4) that the representation was made with the purpose of deceiving the creditor; (5) that the creditor relied on the statement; and (6) that the creditor suffered damage as a proximate result of the representations having been made. *In re Church*, 69 B.R. 425, 432 (Bankr.N.D.Tex. 1987); *In re Denton*, 122 B.R. 310 (Bankr. S.D.Tex.1990); *In re Chaney*, 109 B.R. 214 (Bankr.N.D.Tex.1989). Plaintiff proved elements (1) through (5). *See*, prior findings and PX 4, wherein Defendant represented that he resided on the Wise County Property and claimed only it as his legal homestead.

Since, by virtue of the estoppel findings and conclusions, the Bank did end up with a lien on the property, the only proven § 523(a)(2)(A) loss that it suffered was the attorney expense it incurred in prosecuting these proceedings substantially successfully. Accordingly, only the attorney fee and expense portion of the debt in the amount of $67,047.56 is found non-dischargeable. While relating to § 523(a)(2)(B) issues, and

not directly in point, see generally, *Matter of Jordan*, 927 F.2d 221 (5th Cir.1991).

## § 523(a)(6)

Plaintiff also asserts that the entire debt is non-dischargeable under § 523(a)(6). In the prior discussion of § 523(a)(2)(A), the attorney fee portion of the Plaintiff's claim has been found to be the only portion of the Plaintiff's claim that is non-dischargeable. Even if § 523(a)(6) was applicable to this fact situation (and the Court is not making a finding that it is or is not), the maximum amount that would be found to be non-dischargeable under § 523(a)(6) would be Plaintiff's attorney fees. In view of this finding, it is unnecessary to address the issue of whether § 523(a)(6) is or is not applicable to a fact pattern such as is involved in this case.

## *Whether Debtor's Usury Claim is Barred by Limitations*

The prior opinion at p. 849 factually found that there was no valid usury claim in this case. Because of such findings, it was unnecessary to address the limitation defense of the Bank. Defendant now requests that the limitations defense of the Bank to the usury claim be addressed. Although the stipulation, whether verbal or written, has not been specifically brought to the Court's attention, the parties apparently somewhere stipulated that this bankruptcy adversary proceeding would be tried with both parties preserving the same rights to claims and defenses that they had in the State Court action. That stipulation and the State Court pleadings, together with the filing dates of same, would have to be examined in order to adequately address such limitations issue. In view of the great number of issues already addressed in this case, and the prior findings already made that resolve the usury issue, it appears unnecessary to address the limitations issue further at this time.