**In re Richard Lee LEONARD a/k/a Dick Leonard, d/b/a Leonard Enterprises,**

**and**

**Stephanie Jo Leonard, a/k/a Stephanie Dunn, d/b/a Accuracy Plus, Debtors.**

**Bankruptcy No. 695–60228–7.**

United States Bankruptcy Court,
N.D. Texas,
San Angelo Division.

April 26, 1996.

Ronald M. Mapel, San Angelo, TX, for Debtors.

Robert R. Truitt, Jr., Midland, TX, for The State National Bank.

Harvey Morton, Lubbock, TX, Trustee.

## MEMORANDUM OF OPINION ON HOMESTEAD

JOHN C. AKARD, Bankruptcy Judge.

The State National Bank of Big Spring, Texas [1] (Bank) objected to the claim by Richard Lee Leonard and Stephanie Jo Leonard (Leonards) of property in Midland, Texas as their residential homestead. The court finds that the Leonards had not abandoned the property as their homestead and that the Bank's objection should be denied.[2]

### FACTS

The Leonards purchased the property at 1403 Princeton, Midland, Texas (Midland House) in June 1979. They were married shortly thereafter and immediately occupied

---

1. Originally the Bank and Harvey Morton, the Trustee in Bankruptcy for the Leonards, jointly filed the objection. The Trustee withdrew his objection on the eve of trial.

2. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and

Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(B).

the house as their marital homestead. In her testimony, Mrs. Leonard described it as an "executive house" in an older part of town. It consists of two large wings, a swimming pool, a cabana, and a game room. It contains 4500 square feet. In 1988 Mr. Leonard had a heart operation and retired. The family received income from rental properties and oil and gas properties. In 1990 Mr. Leonard filed a proceeding under Chapter 11 of the Bankruptcy Code which the court subsequently converted to Chapter 7 but, later, dismissed.

In January 1993 the Leonards moved to a lot on Oak Creek Lake, near Blackwell, Texas (Lake House).[3] Mrs. Leonard and her mother have a long term "lake lease" on the property.[4] The Leonards live on the property in a six room metal building which contains only minimal kitchen facilities. A house trailer and a few other buildings are also located on the property.

Mrs. Leonard testified that they moved to Blackwell because their daughter was not doing well in the Midland public schools. The Leonards thought that if they put their daughter in a smaller school she would do better. Mrs. Leonard stated that their daughter had done much better in the Blackwell school. Mrs. Leonard testified that the family intends to return to Midland and live in the Midland House when their daughter begins junior high school in August, 1996.

The Debtors rented the Midland House almost continuously from 1993 until after they filed this bankruptcy proceeding, at which time they evicted the tenant for nonpayment of rent. Mrs. Leonard testified that they continue to receive mail at the Midland House. They also maintain a listing in the Midland telephone directory which gives the address of the Midland House. They arranged with the telephone company to automatically forward calls made to the Midland number to the Lake House. They continue to vote in Midland and they list the Midland House as their address on their driver's licenses.

On November 7, 1995, the Leonards filed their bankruptcy petition in this case. Mrs. Leonard testified that their purpose was to forestall an ad valorem tax foreclosure on the Midland House. In their petition the Leonards stated that they resided in Coke County, Texas and gave their address as Route 1 Box 141A, Blackwell, Texas. They stated that their principal business assets (rental property) were in Midland, Texas.

## DISCUSSION

■ Exemptions are determined as of the date of the filing of the bankruptcy petition. *Hrncirik v. Farmers Nat'l Bank (In re Hrncirik)*, 138 B.R. 835 (Bankr.N.D.Tex. 1992). The Leonards elected the state exemptions under § 522(b)(2)(A) of the Bankruptcy Code.[5] Texas law allows a family to claim an urban homestead of up to one acre of land as exempt without regard to the value of the improvements. Tex.Prop.Code Ann. § 41.002(a) (Vernon Supp.1996). The Bank did not object to the amount of land occupied by the Midland House, so presumably it is not larger than one acre.

■ The Bank asserts that by listing Coke County as their place of residence, the Leonards are judicially estopped from claiming the Midland House as their residential homestead. The court cannot agree. A residence and a homestead may be two different properties. For bankruptcy purposes, residency is merely the place where the debtors resided for the greater part of the 180 days before they filed their petition. 28 U.S.C. § 1408(1). The fact that the Leonards resided in Coke County for more than 180 days does not establish as a matter of law that

---

**3.** Blackwell is approximately 125 miles from Midland. The land between the two communities is sparsely settled ranch land.

**4.** Mr. and Mrs. Leonard offered the only testimony at this hearing. No title examinations were offered into evidence. The court's determinations as to ownership of property are based on the Leonards' testimony. Consequently such findings shall not be *res judicata* in any other proceeding.

**5.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

their homestead is in Coke County.[6]

■ In its Reply Brief, the Bank asserts that the critical issue is whether the Leonards were occupying the Midland House at the time they filed their bankruptcy petition. The brief states that the rules are different under bankruptcy law than in a state court proceeding. The Bank is mistaken. The Leonards selected the state exemptions and the bankruptcy court must look to state law to interpret state homestead exemption rights.[7] In support of its position, the Bank cites *Brown v. Brown (In re Brown)*, 191 B.R. 99 (Bankr.N.D.Tex.1995). However, that case does not support the Bank's position because Ms. Brown and her new husband had established a homestead in property owned by her new husband. Texas allows only one homestead for the family. Thus, Ms. Brown was not able to claim her former home as exempt.

■ Courts first look to see whether the property at issue has been the homestead. In the instant case, clearly the Midland House was the Leonard's homestead from 1979 until they moved out of it in January 1993. Next the court must determine if they have abandoned that homestead, either with or without acquiring another homestead. The Bank has the burden of proof because "anyone asserting an abandonment has the burden of proving it by competent evidence." *Sullivan v. Barnett*, 471 S.W.2d 39, 43 (Tex. 1971) (citations omitted). Whether the homestead has been abandoned is a question of intent. "[A]bandonment of a homestead is a question of fact to be determined in each case from the entire evidence before the court or jury and ... in cases of physical absence, the lack of definite intention of not to return and use and occupy such homestead is the controlling fact." *Coleman v. Banks*, 349 S.W.2d 737, 741 (Tex.Civ.App.— Dallas 1961, writ ref'd n.r.e.) (citations omitted). Temporary renting of the homestead does not change its homestead character if

the homestead claimant has not acquired another homestead. Tex. Const. art. 16, § 51; Tex.Prop.Code Ann. § 41.003 (Vernon Supp. 1996).

The question of whether a homestead is abandoned by the temporary renting thereof if the same be either a business or residence homestead is ordinarily a question of intention. The fact that appellee ceased to occupy the homestead on the execution of the lease or contract with the State does not constitute abandonment as a matter of law.

The ultimate question to be resolved is as to whether claimant intended to resume the possession of the premises as a homestead.

*El Paso v. Long*, 209 S.W.2d 950, 954 (Tex. Civ.App.—El Paso 1947, writ ref'd n.r.e.) (citations omitted).

■ The fact that the Leonards have resided in Coke County for more than three years does not constitute an abandonment of the Midland House as their homestead as a matter of law. In *Spikes–Nash Co. v. Manning*, 204 S.W. 374 (Tex.Civ.App.—Texarkana, no writ), the homestead claimant leased the property for six years and moved to another state. Since the jury found that the claimant intended to return and live on the homestead and had not abandoned the homestead, the court voided an execution sale conducted during the claimant's absence from the state.

■ The fact that the Leonards moved to other property in which they owned an interest does not constitute an abandonment of the Midland House as their homestead as a matter of law.

The acquiring of a new home is not always the acquiring of a new homestead, and one does not necessarily abandon a homestead by merely moving his home. This Court recently stated that " * * * beginning as early as 1857, in an opinion by Chief Jus-

---

6. The Bank pointed to a number of discrepancies in the Leonard's bankruptcy schedules. None of those discrepancies related to the matter at issue in this proceeding. Further, they were not of sufficient magnitude to have a bearing on the outcome of this proceeding.

7. *Bradley v. Pacific Southwest Bank (In re Bradley)*, 121 B.R. 306, 312 (Bankr.N.D.Tex.1990), *rev'd on other grounds, In re Bradley*, 960 F.2d 502 (5th Cir.), *cert. denied sub. nom., Commonwealth Land Title Ins. Co. v. Bradley*, 507 U.S. 971, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993).

tice Hemphill in *Gouhenant v. Cockrell*, 20 Tex. 96, our courts have held that 'it must be undeniably clear and beyond almost the shadow, at least [of] all reasonable ground of dispute, that there has been a total abandonment with an intention not to return and claim the exemption.'" (citing *Burkhardt v. Lieberman*, 138 Tex. 409, 159 S.W.2d 847, 852 (Comm'n App.1942, opinion adopted).

*Rancho Oil v. Powell*, 142 Tex. 63, 175 S.W.2d 960, 963 (1943).

The facts in *McKenzie v. Mayer*, 20 S.W.2d 238 (Texas Civ.App.—Waco 1929, no writ), bear a great similarity to the case at bar. In 1921 the Mayers established a homestead in Mexia, Texas in which they lived and conducted a bakery business. In 1927, they moved to Houston because of Mrs. Mayer's medical problems. While in Houston Mr. Mayer paid a poll tax and signed a deed which recited that he was a resident of Houston. In 1929 a creditor sought to levy on the Mexia property. The court found that the Mayers had an intention to return to Mexia and thus had not abandoned their homestead. The court denied the levy. The court said:

> The right to a residence homestead in a particular tract of land having once vested by ownership, occupancy, and use thereof as such, such right is presumed to continue until there is affirmative proof of abandonment. To constitute such abandonment there must be a removal therefrom with intent not to return to it as a place of residence, or such definite intention must be formed after removal therefrom. Even the temporary occupancy of other property owned by either husband or wife, and which might therefore be claimed as homestead, does not constitute an abandonment of the homestead formerly occupied as such, when no intention to abandon exists. ... The fact that Mayer paid a poll tax in [Houston] was a circumstance to be considered in determining whether he had at that time a specific intention never to return and occupy the Mexia property as a homestead. It did not establish the existence of such intent as a matter of law, nor constitute an abandonment of his home-

stead claim to the property levied on. Neither did it estop him in any way to assert such claim.

*Id.* at 240–41 (citations omitted).

■■■■ The Leonards could have established a homestead in the Lake House. The fact that the lake lease was held by Mrs. Leonard and her mother is no impediment because "[i]t is elementary that a homestead may be established on an undivided interest in lands." *Travelers Ins. Co. v. Nauert*, 200 S.W.2d 661, 664 (Tex.Civ.App.—El Paso 1942, no writ). Likewise, a homestead can be established on leased property. *Sullivan, supra*, 471 S.W.2d at 43. However, for the property to become a homestead, there must be an intent to establish a homestead. The testimony in this case shows that the Leonards considered their stay at the Lake House to be "camping out" and that they maintained an intent to return to their home in Midland when their daughter began junior high school.

■■■ In two Texas cases, those who claimed property as homestead temporarily relocated to nearby towns to educate their children. The appellate courts held that they had not abandoned their homestead rights by so doing. See *Birdwell v. Burleson*, 31 Tex. Civ.App. 31, 72 S.W. 446 (1902, writ ref'd); *C. Aultman & Co. v. Allen*, 12 Tex.Civ.App. 227, 33 S.W. 679 (1896, writ ref'd). This court finds the result does not change in the instant case merely because the claimants moved from town to a rural area to educate their daughter.

The court has reviewed the cases cited in the Bank's brief. Although some of them found an abandonment of all or a part of the homestead based on the facts of the particular case, they do not change the basic concept that the deciding factor in determining whether homestead rights have been retained or abandoned is the intent of the homestead claimant. Having found that the Leonards' intent, as expressed in their words and in their actions, was to continue to claim the Midland house as their homestead, the Bank's objection must be denied.

## CONCLUSION

Although the Leonards have lived at the Lake House for more than three years, the evidence shows that they always intended to return to Midland and considered the Midland House their homestead. That intention was manifested in their actions such as maintaining a Midland telephone number, receiving mail at the Midland House, voting in Midland and claiming the Midland House as their homestead in the Bankruptcy Schedules. The court finds that the Midland House remains the Leonards' homestead.

JUDGMENT ACCORDINGLY.[8]

8. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED. R.BANKR.P. 7052, which is made applicable to Contested Matters by FED.R.BANKR.P. 9014. This Memorandum will be published.